## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| YELENA SAVINOVA and YEMILIYA MAZUR, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>NOVA HOME CARE, LLC, SOUTHERN HOME CARE SERVICES, INC., ALEH HULIAVATSENKA, and YULIYA NOVIKAVA,<br><br>     Defendants. | Case No.  3:20-cv-1612-MPS |

**DEFENDANTS SOUTHERN HOME CARE SERVICES, INC. AND
YULIYA NOVIKAVA'S SUR-REPLY BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION
<u>AND NOTICE TO POTENTIAL PLAINTIFFS</u>**

Pursuant to the Court's April 9, 2021 Order [Dkt. 47] (the "Order"), Defendants Southern Home Care Services, Inc. ("SHCS") and Yuliya Novikava ("Novikava") (the "SHCS Defendants", collectively) submit this Sur-Reply in response to Plaintiffs' Reply in Support of their Motion for Conditional Certification [Dkt. 49] ("Reply").

## I.      Summary

Plaintiffs filed a Motion for Conditional Certification ("Motion") seeking to certify a class of current and former SHCS employees who worked as live-in caregivers. *See* [Dkt. 22]. The one named Plaintiff who worked for SHCS (Savinova) contends that SHCS improperly excluded 8 hours of sleep time from her pay on days in which her sleep was interrupted because a client needed assistance. *See, generally id*. The relevant facts are detailed in Defendants' Response to Plaintiff's Motion [Dkt. 43].

Plaintiffs offered one Declaration (Savinova's) to support their argument that other SHCS caregivers were subject to similar practices. [Dkt. 22-2]. The Court held that Savinova's lone assertion that "several other live-in homecare workers employed by Nova and [SHCS] . . . reported being subjected to the same or similar practices as [Savinova]" was insufficient to meet the "similarly situated" requirement for conditional certification with regard to SHCS caregivers. *See* [Dkt. 47]. Plaintiffs submitted additional evidence on reply, but have failed to show, even with a second chance, that other SHCS caregivers were subject to similar policies

and/or practices *during their employment with SHCS* (*i.e.*, not while working for the other Defendant in this case, Nova Home Care, LLC ("Nova")).[1] *See id.*

It seems the Court's Order did not resonate with Plaintiffs, who submitted four additional declarations with their Reply. [Dkts. 49-1; 49-2; 49-3; 49-4]. These declarations do not offer testimony regarding caregivers' specific work experiences with SHCS. *See, generally id.* Instead, they purport to further Plaintiffs' untenable theory of joint liability – essentially claiming SHCS caregivers were subject to Nova's policies and are thus "similarly situated". *Id.*; *see* [Dkt. 49], p. 5. None of this testimony supports Plaintiffs' claim that SHCS caregivers were "similarly situated" – it essentially does the opposite.

The evidence proffered with Plaintiffs' Reply is particularly underwhelming given that this is their second bite at the apple. At the April 8th hearing, Plaintiffs confidently proclaimed they could easily provide the Court with additional details regarding the "several" other caregivers who had "similar experiences" working for SHCS. Even now, have not done so. Plaintiffs still fall short of satisfying the modest, "similarly situated" requirement for conditional certification against SHCS. Moreover, even if the declarants' testimony assisted Plaintiffs in satisfying the

---

[1] The Court found that Plaintiffs barely satisfied the "similarly situated" requirement with respect to caregivers working for Nova and granted Plaintiffs' Motion for Conditional Certification in that regard. *See* [Dkt. 47].

"similarly situated" requirement for conditional certification (which it does not), the Court should exercise its discretion in declining to consider such evidence because "[i]t is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (internal citations omitted). Plaintiffs' Motion for Conditional Certification should be denied with regard to the SHCS caregivers.

## II.   The Court should exercise its discretion and disregard Plaintiffs' new declarations in their entirety

As raised during the prior hearing, it is improper for Plaintiffs to have withheld evidence and testimony that was in their possession when moving for conditional certification, only to raise it on reply.   In this situation, the Court may, in its discretion, choose to disregard evidence filed in violation of its procedural rules. *See Revise Clothing, Inc.*, 687 F. Supp. 2d at 387. There is no question that the declarations offered with Plaintiffs' Reply are improper – when moving for conditional certification, Plaintiffs have the burden of meeting the "similarly situated" requirement. *See Zhang v. Sabrina USA Inc.*, No. 18-CV-12332 (AJN) (OTW), 2019 U.S. Dist. LEXIS 213318, at *14 (S.D.N.Y. Dec. 10, 2019). As such, all evidentiary information available to Plaintiffs that is necessary to meet their

burden in this regard should have been presented with their initial Motion. *See Revise Clothing, Inc*., 687 F. Supp. 2d at 387.

Even though they are facially deficient (for the reasons discussed below), to the extent the four declarations submitted with Plaintiffs' Reply are proffered to satisfy the "similarly situated" burden for conditional certification, there is no reason this evidence could not have been submitted with Plaintiffs' initial Motion. One declaration is submitted by a named Plaintiff who has been involved in this lawsuit since its inception. [Dkt. 49-1]. Another is submitted by an opt-in who proffered a declaration in support of Plaintiffs' Motion for Protective Order (submitted before Plaintiffs' Reply), but contained no testimony remotely relevant to the "similarly situated" inquiry. *See* [Dkt. 36-3]. This testimony was available to Plaintiffs, was necessary for Plaintiffs to meet the burden for conditional certification, and should have been submitted with Plaintiffs' initial Motion, but it was not. Thus, to the extent the Court finds that this new evidence is relevant to the "similarly situated" inquiry (which it is not), it was submitted in violation of this Court's procedural rules and should be disregarded. *See Perkins v. S. New Eng. Tel. Co*., 669 F. Supp. 2d 212, 226-227 (2009); *Tolliver v. McCants*, No. 05 Civ. 10840, 2009 U.S. Dist. LEXIS 44796, (S.D.N.Y. May 26, 2009); *Seneca Insurance Co. v. Wilcock*, No. 01 Civ. 7620, 2005 U.S. Dist. LEXIS 26475 (S.D.N.Y. Nov. 3, 2005).

**III.   Even if considered, the additional information Plaintiffs offer on reply is insufficient to support conditional certification**

Throughout this case, Plaintiffs have ambiguously referenced the "several other live-in homecare workers employed by [SHCS who] reported being subjected to the same or similar practices" as Savinova. [Dkt. 22-2], ¶ 17. The reason for this strategic ambiguity is that these caregivers work on a solitary basis in their clients' homes on a 24-hour basis, and cannot, as a rule, observe others in the workplace. Thus, it is not surprising that Savinova never provided the names of these "several" individuals or described what they supposedly "reported". The Court alerted Plaintiffs to the specific deficiencies in Savinova's testimony in this regard:

> That assertion is vague not specifying the names of other employees subjected to SHCS's policy, when she spoke to them, how many she spoke to, or what is meant by the "same or similar practices. And it is unsupported it is unaccompanied by any other details supporting a 'similarly situated' finding, let alone affidavits from other SHCS employees or other evidence of their working conditions. This failure is problematic because the putative members of the collective, although all live-in homecare workers, work for different clients, in different homes, and under different circumstances.

[Dkt. 47-0].

The declarations Plaintiffs submit with their Reply address none of the Court's concerns. The Court's Order asked Plaintiffs for more details regarding live-in caregivers' allegedly non-compliant work experiences with SHCS, not more vague, conclusory declarations. Not one of the new declarants provide testimony suggesting

that they have viable claims in this case against SHCS or that their experiences are at all similar to those claimed by Savinova. Below is a summary of the declarations and their content (or lack thereof).

### A.    Yelena Savinova (Plaintiff)

Savinova did not (as the Court suggested she do) supplement her original Declaration by identifying the "several" other employees she allegedly spoke to regarding their work experiences at SHCS, or when she spoke to them, or the content of the conversations – nor did Savinova explain what she meant when referring to "same or similar practices". *See* [Dkt. 47]. The supplemental Declaration Savinova submitted with Plaintiffs' Reply adds the following three facts to her original testimony:

- During my time working for nova and southern, I have dealt with Nova's owner, Aleh Huliavatsenka, regarding my assignments and work hours, and any requests for time off. [Dkt. 49-1], ¶ 3;

- During the weeks when my wages were split between Nova and Southern, Southern paid me for 16 hours per day. Nova initially also paid me for 16 hours per day but later reduced it to 14.5 hours per day[.] [Dkt. 49-1], ¶ 4; and

- Upon information and belief, Yuliya Novikava, who runs Southern, is Huliavatsenka's wife or non-married partner. [Dkt. 49-1], ¶ 5.[2]

---

[2] While not relevant at all to the inquiry, this allegation is also incorrect.

None of this has anything to do with the experiences of other caregivers working for SHCS. It does nothing to explain how other SHCS caregivers, who work for different clients, in different homes, under different circumstances, and on their own, are "similarly situated" to Savinova.[3] It is entirely unclear how Savinova's dealings with Nova and/or its principal, Aleh Huliavatsenka ("Huliavatsenka") (collectively referred to as the "Nova Defendants") support conditional certification of a class of caregivers who worked for SHCS, an entirely different company. Aside from that, Savinova's "information and belief" regarding the personal relationship between Novikava and Huliavatsenka is not only improper content for a declaration (as, by stating the allegation is on "information and belief" she admits to having no personal knowledge of the facts stated), but it is wholly

---

[3] Savinova's first Declaration also completely undermines any supposition that caregivers under the current circumstances can be similarly situated because their work environments, schedules, and duties change from client to client. *See* [Dkt. 22-2], ¶¶ 5-10. In order for two or more caregivers to be similarly-situated, their clients would have to be "similarly situated" with regard to their physical/mental condition, age, medical needs, sleep schedule, activity level, and dozens of other factors. *See id.* (Savinova testifying that, of the six clients she was assigned during her tenure with Nova and SHCS, one slept between 7-8 hours per night and required assistance at least one time per night; one client required frequent assistance during the night, but later needed constant assistance because her medical condition worsened; one client could be left completely unattended all night; two other clients could be left unattended so long as Savinova checked on them once per night; and one client needed "regular" assistance throughout the night).

irrelevant to the "similarly situated" inquiry. Savinova's "supplemental" testimony thus adds nothing of value or substance.

**B.    Meri Lukianova (opt-in)**

Ms. Lukianova claims she only applied for employment with Nova, not SHCS; she submitted payroll-related paperwork to Nova; and she exclusively communicated with Nova's principal (Huliavatsenka) regarding work-related issues (including complaining to Huliavatsenka about "waking up multiple times per night" during her shift). [Dkt. 49-2], ¶¶ 4, 10, 18-19.

Plaintiffs surely cannot be proffering Ms. Lukianova's Declaration to show she was similarly situated to Savinova with regards to her experiences working for SHCS – she cannot even recall applying for employment with SHCS, speaking to any SHCS employee, or knowing of any SHCS-specific policy with regards to her job as a live-in caregiver. *See id*. Moreover, aside from vague, overly broad claims that her sleep was "interrupted", Ms. Lukianova provides no additional details regarding her work experiences (with SHCS or otherwise). *Id*. Lukianova does not state whether she ever worked a shift in which she did not receive five hours of uninterrupted sleep; she does not provide a single example of a shift during which her sleep was interrupted; she does not state whether the interruptions prevented her from having eight total hours of rest/sleep time; she does not offer an estimate as to

9

how many hours she slept on average when working for specific clients; and, like Savinova, she provides no details regarding the "several other live-in homecare workers" who purportedly had similar experiences when working for SHCS. *See* [Dkt. 49-2], ¶¶ 4, 10, 18-20

### C.    Tatyana Fedotova (opt-in)

Tatyana Fedotova's testimony is similar to Lukianova's, and thus similarly unhelpful to Plaintiffs' ability to satisfy the "similarly situated" requirement for conditional certification. Like Lukianova, Fedotova claims, "When I first started working, Nova's owner Aleh Huliavatsenka gave me paperwork to fill out. I did not fill out any separate paperwork for Southern." [Dkt. 49-3], ¶ 4. Fedotova also claims that when she "had a question or issue with [her] work hours, or had to request time off, [she] dealt exclusively with Huliavatsenka. [She] did not separately notify anyone at Southern." [Dkt. 49-3], ¶ 6.

The most confounding aspect of both Fedotova and Lukianova's testimony is how an individual can have personal knowledge that a certain entity is their "employer" when they claim to have never applied for employment with that entity, claim to have never completed employment-related paperwork with that entity, claim to have never communicated with that entity regarding their work schedule, rate of pay, or requests for time off, and claim to have never directly dealt with any

employee of that entity in any manner whatsoever.[4] Equally confounding, however, is why Plaintiffs offer such testimony in furtherance of an argument that Lukianova and Fredotova are "similarly situated" with regard to their experiences working for SHCS – when neither declarant recalls applying for employment with SHCS, let alone knowing of any SHCS-specific policy or practice.

The only statements Fredotova offers that actually relate to her purported work experiences are vague,  conclusory, and therefore insufficient to support conditional certification. *See* [Dkt. 49-3], ¶ 11 (clients "often woke up several times each night and I had to get up and assist them . . . I was not asked to report and I did not report to Nova or Southern whether I had at least 8 hours for sleep per night or whether my sleep was interrupted to assist the client during the night."). These statements do nothing to further Plaintiffs' argument that SHCS employees were similarly situated when Fredotova claims to have never dealt with anyone from SHCS regarding any aspect of her employment. Like Lukianova, Fredotova

---

[4] Moreover, while these declarants seem to have had no dealings whatsoever with SHCS, they somehow claim to have information that Novikava (the Executive Director of SHCS's Connecticut office) is the "wife or non-married life partner" of Nova's principal, Huliavatsenka. *See* [Dkt. 49-2], ¶ 21; [Dkt. 49-4], ¶ 15; [Dkt. 49-1], ¶ 5.  While not relevant to the inquiry here, and purely as an aside, their information is also inaccurate.

provides no details, and provides no specific testimony as to any non-compliant policy that exists at SHCS regarding sleep time. *See, generally* [Dkt. 49-3].

### D.    Lyudmyla Chumakova (opt-in)

Plaintiffs' fourth declaration comes from Lyudmyla Chumakova, who previously submitted a declaration in conjunction with Plaintiffs' Motion for Protective Order (which made no mention of her work experiences at SHCS). *See* [Dkt. 36-3]. Why Plaintiff did not submit a declaration from Ms. Chumakova the first time around remains a mystery.  This time, Ms. Chumakova's testimony (like the other three declarants) focuses on her dealings with Nova and her speculations regarding the personal relationship between Huliavatsenka and Novikava. *See, generally* [Dkt. 49-4]. What little information Ms. Chumakova does provide is vague and contains the same boilerplate statement included in others: "I was not asked to report and I do not report to Nova or Southern whether I have at least 8 hours for sleep per night or whether my sleep is interrupted to assist the client during the night." *See* [Dkts. 49-2, ¶ 16; 49-3, ¶ 11; 49-4, ¶ 10].

The lack of detail Chumakova provides with regard to her experiences working for SHCS is notable when compared to the testimony she offers on other, irrelevant topics. *See, e.g.* [49-4], ¶ 16 (recounting incident on June 3, 2016 in which Chumakova spotted Huliavatsenka (Nova's principal) and Novikava (the Executive

Director of SHCS's Connecticut office) together at a restaurant celebrating Novikava's birthday). Chumakova's ability to recall the specific date of a chance encounter with Novikava and Huliavatsenka at a restaurant nearly five years ago is certainly impressive; however, it is irrelevant to the issue presently before the Court (*i.e.* whether Chumakova and Savinova had similar experiences working as caregivers for SHCS).[5] It would be much more helpful if Chumakova could, for example, describe one day during the course of her employment with SHCS in which she was unable to have five consecutive hours of sleep time during her shift.

Like Plaintiffs' other declarants, Chumakova only offers the same non-specific testimony regarding her work experiences, and she fails to specify whether these experiences occurred during the course of her employment with SHCS or Nova: "at times I have been able to sleep through the night and at other times, when the client's condition worsened, I had to get up several times a night." [Dkt. 49-4], ¶ 8. ¶ 10. Chumakova does not provide a single example of a shift during which her sleep was interrupted; she does not state how often her sleep was purportedly interrupted; and she does not offer an estimate as to how many hours she slept on

---

[5] Of course, Chumakova's Declaration also includes her suspicions regarding the nature of Novikava and Huliavatsenka's personal relationship. *See* [Dkt. 49-4], ¶ 15 ("Upon information and belief", Novikava is Huliavatsenka's "wife or non-married life partner and they live together with their child"). Again, this both irrelevant and inaccurate.

average when working for specific clients. *See, generally* [Dkt. 49-4].   Indeed, even if Chumakova (or others) had their sleep interrupted during an evening, the exclusion of sleep hours would still be compliant if they received a total of eight hours where they had the opportunity to sleep during the shift, with at least five consecutive hours during that timeframe. *See* 29 C.F.R. 785.23. Further, less stringent rules exist where the employee works at least five 24-hour shifts with the same client each week – a situation where the caregiver effectively lives with the client full-time. *See* 29 C.F.R. 785.23; *see also* 29 C.F.R. 552.102 (a live-in domestic service "employee and the employer may exclude, by agreement between themselves, the amount of sleeping time, meal time and other periods of complete freedom from all duties when the employee may either leave the premises or stay on the premises for purely personal pursuits"; noting that to exclude off-duty time other than meal and sleep time, it must be "of sufficient duration to enable the employee to make effective use of the time."). While we primarily focus here on the 8 hour/5 hour sleep time requirements, these less stringent requirements for full-time live-in employees may also apply to those employees who spend 5+ days living with the client in a workweek – which as the filed declarations show, many did. Thus, entirely absent from Plaintiffs' analysis is the applicable rules under which the putative class members worked, which were indisputably different, depending upon whether they lived with a client full-time.

14

None of the vague declarations (new or old) address the actual issue in the case, pretermitting any finding that SHCS acted in any non-compliant manner or that they were similarly situated to other employees.

## IV. Plaintiffs proffered testimony does not meet even the most lenient specificity standards required by applicable caselaw

The Court asked Plaintiffs for evidence to satisfy the "similarly situated" burden with regard to other caregivers working for SHCS. *See* [Dkt. 47]. In response, Plaintiffs submitted declarations that contain no information whatsoever about the declarants' experiences working for SHCS, much less against the applicable legal standard for the exclusion of sleep time by an employer. Even ignoring the fact that these declarants only recall their employment experiences with Nova, the substance of their testimony is insufficient to satisfy the modest "similarly situated" showing required for conditional certification.

### A. The testimony of Plaintiffs' declarants is irrelevant to conditional certification of SHCS caregivers

The issue presently before the Court is whether Plaintiffs have met the "similarly situated" requirement with regard to some common policy or practice of SHCS – *not Nova* (or Nova's principal, Huliavatsenka). *See* [Dkt. 47]. Plaintiffs' Reply was supposed to address other caregivers' SHCS-specific work experiences. *Id.* For whatever reason, Plaintiffs chose to do the opposite by presenting declaration

testimony exclusively relating to declarants' employment-related interactions with Huliavatsenka and/or "a Nova office employee" in regards to hiring, pre-employment paperwork, communication of work-related policies and procedures, scheduling, and other employment-related matters. *See* [Dkt. 49-2], ¶¶ 4, 9-10; [Dkt. 49-3], ¶¶ 4, 6; [Dkt. 49-4], ¶ 4-5, 14.

This strategy is fatally flawed for purposes of satisfying Plaintiffs' burden on conditional certification. Because none of the declarants offer testimony regarding their SHCS-specific work experiences, Plaintiffs have failed to present the Court with any evidence to support conditional certification with regard to SHCS's caregivers – they essentially point to conditions at Nova and then claim, without basis or any personal knowledge, that SHCS and Nova are the same company (which they are indisputably not).   All of the alleged common policies and practices described are Nova's, and purportedly communicated by Nova's principal (Huliavatsenka). None of Plaintiffs' evidence independently supports conditional certification of caregivers who worked for SHCS.

### B. Plaintiffs cannot circumvent the "similarly situated" requirement by arguing theories of "joint employer" liability

As discussed above, rather than offer testimony directly relating to caregivers' experiences working for SHCS, Plaintiffs' took the opposite approach in an attempt to further their inherently-flawed "joint employer" theory of liability. *See* [Dkt. 49],

p. 4. Plaintiffs' argument that SHCS should ultimately be held jointly liable for any common policy or practice of Nova with regard to Nova employees does not speak to the issue presently before the Court. Pushing the joint employer theory at this stage achieves nothing.

Defendants have already demonstrated that none of the factors required to find joint employer liability are present in this case with regard to Nova and SHCS. The two companies (which are actually competitors) share no common ownership, and have no overlapping business operations or other affiliation with each other whatsoever. *See* [Dkt. 43-1], ¶¶ 7, 34-36. Plaintiffs have no personal knowledge regarding the ownership or management structure of SHCS (or Nova, for that matter) and have no evidence to dispute such facts.  Rank speculation is an insufficient basis upon which to grant conditional certification.

Plaintiffs have reached a new level of desperation in trying to further their joint employer argument. Three of the four declarations submitted with Plaintiffs' Reply contain testimony that "Upon information and belief . . . Novikava, who runs Southern, is Huliavatsenka's wife or non-married life partner." [Dkt. 49-2], ¶ 21; [Dkt. 49-4], ¶ 15; [Dkt. 49-1], ¶ 5. "Information and belief" is not the same thing as "personal knowledge" – and this is sworn affidavit testimony, not notice pleading in a Complaint, a fundamental difference. Yet, nearly every sworn declaration

submitted by Plaintiffs in this case (including one submitted by Plaintiffs' counsel) contains some form of testimony that either: (1) relays secondhand information they received from another party; or (2) is based upon "information and belief". [Dkt. 22-2]; [Dkt. 36-2]; [Dkt. 36-3]; [Dkt. 49-1]; [Dkt. 49-2]; [Dkt. 49-4]. This type of testimony is not appropriate to include in a declaration where a witness is swearing to have "personal knowledge" of the facts stated therein.

It is entirely unclear why Plaintiffs seem to think it matters whether Novikava and Huliavatsenka were or are married, non-married life partners, friends, relatives, or whatever else Plaintiffs' declarants "believe" to be the case. SHCS is a multi-state entity and a subsidiary of one of the largest homecare providers in the country, and not owned in any way by Novikava – she is just an employee. *See* [Dkt. 43-1], ¶¶ 7, 34-36.  Plaintiffs have not offered any authority from any circuit to support the notion that two separate businesses (with no common ownership) can be held liable as joint employers because an employee of one company has a personal relationship with an employee of the other company. None of the factors considered by courts in finding joint employer liability are present in this case. *See, Chao v. A-One Med. Servs.*, 345 F.3d 908, 916-917 (9th Cir. 2003); *Dixon v. Zabka*, No. 3:11-cv-982 (MPS), 2014 U.S. Dist. LEXIS 159692, at *23-28 (D.Cn. Nov. 13, 2014). Plaintiffs'

entirely speculative joint employer arguments are irrelevant and cannot support conditional certification of a class of SHCS employees.

### C. Plaintiffs' declarations are insufficient to satisfy the "similarly situated" requirement for conditional certification

Plaintiffs argue that the declarants' testimony is "more than sufficient to demonstrate the existence of a common policy or plan that violated the FLSA with respect to the Southern Defendants." [Dkt. 49], p. 5. That is not so. As thoroughly discussed above, any alleged common policy of Nova cannot automatically be imputed to SHCS – this involves an entirely different legal question than the one presently before the Court (which is whether Plaintiffs have sufficiently met the "similarly situated" requirement with regard to SHCS employees – *not Nova employees*).

Plaintiffs have no more evidence now than they did when filing their initial Motion. The declarations offered on reply contain more of the same, unsupported assertions that are insufficient to meet even the modest, "similarly situated" requirement. *See Zhang v. Sabrina USA Inc.*, No. 18-CV-12332 (AJN) (OTW), 2019 U.S. Dist. LEXIS 213318, at *14 (S.D.N.Y. Dec. 10, 2019). The few statements that can be interpreted as relating to the declarants' employment with SHCS are vague and conclusory. For example: declarants claim they "woke up several times each night" to assist clients . . . [Dkt. 49-3], ¶ 11; were compensated for 16 hours of work

per day "at all times" . . . [Dkt. 49-4], ¶ 12; and [were] not asked to report and [did] not report to Nova or Southern whether I have at least 8 hours for sleep per night or whether my sleep is interrupted to assist the client during the night." [Dkt. 49-4], ¶ 10. These statements are too vague and conclusory to meet the "similarly situated" requirement and only speak to the experiences of SHCS employees *who also worked for Nova* (which presents the problem described in Paragraph A above).

First, the testimony offered on reply is even less detailed than the testimony offered by Savinova with Plaintiffs' initial Motion for Conditional Certification. For example, Savinova's first Declaration specifically stated the approximate number of hours she slept when assigned to various clients, the approximate number of times she checked on the client during the night (or her sleep was interrupted), and whether the interruptions resulted in her inability to receive five consecutive hours of sleep during a shift (or eight total hours of sleep/rest). *See* [Dkt. 22-2], ¶¶ 5-10.

None of the declarations submitted with Plaintiffs' Reply contain any such details. Two of the declarants (Fredotova and Lukianova) state only that their sleep was interrupted by clients during the night and/or they had to wake up multiple times a night to attend to clients. *See* [Dkt. 49-2], ¶¶ 13, 19; [Dkt. 49-3], ¶ 9. Neither declarant states whether she worked a single shift in which she received less than five consecutive hours of sleep or less than eight total hours during which they had

the opportunity to sleep. *See id*. In other words, these declarants do not even allege concrete facts to support a claim that wage violations even occurred. This is insufficient evidence for conditional certification. *See Mata v. Foodbridge LLC*, 14-Civ-8754, 2015 U.S. Dist. LEXIS 70550 (S.D.N.Y. June 1, 2015) (finding an inadequate factual showing where plaintiff's allegations provided no concrete facts of wage violations for employees engaged in different job functions and for lack of detail about specific observations or conversations with coworkers); *Sanchez v. JMP Ventures, L.L.C.*, 13-Civ-7264, 2014 U.S. Dist. LEXIS 14980 (S.D.N.Y. Jan. 27, 2014) (deciding that conditional certification was not supported where plaintiff's declaration made general allegations about common practices at defendant's restaurants but failed to "provide any detail as to a single such observation or conversation"); *Brown v. Barnes & Noble, Inc*., 252 F. Supp. 3d 255, 263 (S.D.N.Y. 2017) (declining to grant conditional certification based on declarations of a small number of plaintiffs asserting that they were aware of other managers who performed non-exempt duties based on observations and discussions with other managers because the plaintiffs "fail[ed] to provide any details about those observations and discussions, how often they occurred, or the sum and substance of what was discussed or observed.").

The only declarant who even approaches testifying that she did not receive all eight hours of sleep during one or more sifts is Chumakova (even though her testimony remains insufficiently specific). [Dkt. 49-4]. Her conclusory testimony is, like Savinova's, limited to conclusory statements:  "At times I have been able to sleep through the night and at other times, when the client's condition worsened, I had to get up several times a night. Sometimes things were so bad that I was up all night with the client." [Dkt. 49-4], ¶ 8. Chumakova then claims "I was not asked to report and I do not report . . . whether I have at least 8 hours for sleep per night or whether my sleep is interrupted . . . [and] Southern has paid me for 16 hours per day at all times". [Dkt. 49-4], ¶ 12.  However, Chumakova's testimony contains no specific allegation that she did not get the opportunity to sleep at some other point during the shift, or any testimony that would permit the court to assess whether the exclusion should be evaluated under the standards for employees who live full-time at their client's residence (which is entirely an individualized inquiry), or whether Ms. Chumakova's situation should be evaluated under standards for employees who do not live full time a their client's residence *Compare* 29 C.F.R. 785.23 and 29 C.F.R. 552.102. Setting aside the lack of specificity in this testimony, how can the Court determine whether employees are similarly situated when we do not even

know which standards might apply to their employment? The question answers itself.

## V.    Conclusion

Plaintiffs did not do as the Court requested in its April 9th Order.  They now have had two shots at producing actual, non-speculative, non-conclusory evidence to satisfy even the relatively low bar for conditional certification against SHCS, and have failed both times.  Rather than offer evidence that other SHCS were subjected to the same alleged common scheme or practice with regards to their SHCS employment, Plaintiffs avoided the issue completely by reverting to untenable theories regarding SHCS and Nova as joint employers.  Plaintiffs have not even attempted to demonstrate which portion of the Code of Federal Regulations applies to their work, further undermining any ability for the Court to find they were similarly situated to other SHCS employees.  The Court is not deciding liability at this phase, it is deciding whether Plaintiffs' have offered any evidence on Reply that can tip the scales in their favor with regard to conditional certification of a class of SHCS caregivers. Defendants would argue that the declaration testimony submitted with Plaintiffs' Reply had the opposite of its intended effect – and further confirms the requirements for conditional certification have not been satisfied with respect to SHCS.  Because Plaintiff has now had a "do over," with multiple opportunities to

meet the standard as to SHCS, yet still has not, Plaintiff's motion should be denied with prejudice and without leave to re-file. To do otherwise would simply unnecessarily multiply this litigation and place a similarly unnecessary burden on SHCS.

This 30th day of April, 2021.

HAWKINS PARNELL YOUNG, LLP

/s/ *Ronald G. Polly, Jr.*

Jenny DeFrancisco
600 Lexington Avenue, 8th Floor
New York, NY 10022-7678
(212) 897-9659
jdefrancisco@hpylaw.com
Ronald G. Polly, Jr.
(*admitted pro hac vice*)
rpolly@hpylaw.com
Matthew A. Boyd
(*admitted pro hac vice*)
mboyd@hpylaw.com
Christine A. Kurke
(*admitted pro hac vice*)
ckurke@hpylaw.com
303 Peachtree Street, N.E.
Suite 4000
Atlanta, GA 30308
(404) 614-7400

*Attorneys for Defendants Southern Home Care Services, Inc. and Yuliya Novikava*

## <u>CERTIFICATE OF SERVICE</u>

This is to hereby certify that I have this day served the foregoing via email to

the following attorneys of record:

Mariusz Kurzyna
mkurzyna@zagfirm.com
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910

Glenn A. Duhl
gduhl@zcclawfirm.com
Zangari Cohn Cuthbertson Duhl & Grello P.C.
59 Elm Street, Suite 400
New Haven, CT 06510

This 30th day of April, 2021.

*/s/ Ronald G. Polly, Jr.*
Ronald G. Polly, Jr.

25