**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| YELENA SAVINOVA *and* YEMILIYA MAZUR, *individually and on behalf of others similarly situated*,<br>　　　*Plaintiffs*,<br><br>　　v.<br><br>NOVA HOME CARE, LLC, SOUTHERN HOME CARE SERVICES, INC., ALEH HULIAVATSENKA, *and* YULIYA NOVIKAVA,<br>　　　*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:20-cv-01612 (SVN)<br><br><br><br><br><br><br><br><br><br>March 29, 2024 |

## RULING ON DEFENDANTS NOVA HOME CARE, LLC, AND ALEH HULIAVATSENKA'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiffs are a conditionally-certified collective of twenty-six live-in caregivers employed by Defendant Southern Home Care Services, Inc. ("Southern"), Defendant Nova Home Care, LLC ("Nova"), or both between October 27, 2017, and the present, seeking to recover unpaid overtime compensation pursuant to Section 16 of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and unpaid hourly wages and overtime compensation pursuant to Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §§ 31-58 *et seq.*, 31-71a *et seq.*

Plaintiffs bring three separate claims. First, Plaintiffs who worked for both Southern and Nova allege that the companies artificially split workweeks worked by live-in caregivers on the same live-in assignment in order to avoid paying overtime. Plaintiffs claim Southern and Nova should be treated as joint employers such that any combined hours worked in excess of 40 hours per week must be compensated at an overtime rate of pay (the "overtime claims"). Second, Plaintiffs claim that both Southern and Nova improperly excluded time spent sleeping when calculating wages absent a valid agreement to do so or, if there was an agreement, did not pay for

time spent working when sleep was interrupted; therefore, Plaintiffs are entitled to recover any hourly wages and overtime compensation owed when accounting for this time worked (the "sleep time claims").  Third, Plaintiffs allege that Nova improperly deducted additional time from Plaintiffs' wages for personal or meal breaks and that this time worked should also be accounted for in hourly wages and overtime (the "break time claims").

Nova and its sole member and founder Defendant Aleh Huliavatsenka (together, referred to as Nova) jointly move for summary judgment against all Plaintiffs.  For the following reasons, Nova's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

As explained in the Court's ruling granting in part and denying in part the motion for summary judgment filed by Southern and its executive director, Yuliya Novikava (collectively, "Southern"), the Court finds there are genuine disputes of fact pertinent to Plaintiffs' joint employer theory of liability which preclude summary judgment on the overtime claims.

As for deficiencies with individual Plaintiffs' sleep time claims, there are genuine disputes whether the sleep of Plaintiffs Iryna Belavus, Mariam Doumbia, Tatyana Fedotova, Natalia Kos, and Yemiliya Mazur was interrupted on at least one occasion in the applicable limitations period. There is no genuine dispute, however, that Nova did not have actual or constructive knowledge of six Plaintiffs' purported sleep interruptions:  Plaintiffs Doumbia, Fedotova, Viktoria Ilina, Ashley McLaughlin, Halina Rutkowska, and Ruby Spencer.  This finding does not dispose of Plaintiffs' sleep time claims entirely, however.[1]

Last, the Court finds that there are genuine disputes of fact on whether Nova violated the FLSA willfully, such that a three-year statute of limitations period may be appropriate.  Because

---

[1] As Plaintiffs note, Nova seeks only summary judgment on the overtime and sleep time claims, not the break time claims.  The break time claims therefore may proceed, except as described toward the end of this ruling.  Pls.' Opp. Mot. Summ. J., ECF No. 165 at 15.

the Court declines to equitably toll the statute of limitations period further, however, the claims of five opt-in Plaintiffs (Plaintiffs Lateefatu Fuseini, Karen Harrison, Marianna Jaksina, Maria Kalata, and Galyna Vlasova) are time-barred as they worked for Nova more than three years from when they opted into the collective action.

## I.    FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise noted.[2]

### A.  The Home Care Program for Elders

The Connecticut Department of Social Services ("DSS") provides Medicaid-funded home care for elderly individuals in the state of Connecticut as part of its Home Care Program for Elders. Pls.' L.R. 56(a)2 St., ECF No. 165-1 ¶ 3(b)–(c).  In order for an elderly individual to qualify for the program, DSS verifies that the individual's needs are sufficiently manageable such that a live-in caregiver would be able to obtain eight hours of sleep per night, five of which must be uninterrupted.  *Id.* ¶ 4(a).  The elderly individual completes a "Participant Risk Agreement" to one of two nonprofit "Access Agencies."  *Id.* ¶ 4(c)–(d).  In late 2016 or early 2017, DSS mandated that live-in caregivers use an Electronic Visit Verification ("EVV") system to report time, including if a client needs services during a live-in caregiver's scheduled sleep time.  *Id.* ¶¶ 10–11.

### B.  Nova

Nova is a Connecticut limited liability company founded by Aleh Huliavatsenka, Nova's sole member.  *Id.* ¶ 2(a).  Nova employs live-in caregivers for twenty-four hours per day.  *Id.* ¶ 3(a).  Nova only operates as part of the DSS Home Care Program for Elders and uses the program's mandated EVV system to record caregivers' time.  *Id.* ¶¶ 3(b), 10.

---

[2] Where facts are undisputed, or a denial is not followed by citations to admissible evidence, the Court cites only to Plaintiff's Local Rule 56(a)2 Statement.  *See* D. Conn. L.R. 56(a).

The parties dispute the extent to which Nova's live-in caregivers are told they are entitled to the eight hours of sleep time (five uninterrupted) per night and three hours of personal time per twenty-four-hour shift, neither of which are paid.  Nova appends a copy of its handbook, which contains a "Live-In Care Provision" introduced in 2017 that embodies this policy:

> Agreement is made between Company, Employee and Client/Client[']s family that every Live in Caregiver is entitled to 8 hours of sleep time per night, 5 of which must be uninterrupted.  In addition to sleep time every Live in Caregiver is entitled up to 3 hours of personal time off per 24 hours' work shift. . . . Sleep time and additional time off will be excluded from all hours worked.  Live in Caregiver must notify Company within 24 hours after worked shift if Live In Caregiver did not have 8 hours of sleep time and did not have agreed personal time off.

*See* Defs.' Ex. A, Caregiver Handbook, ECF No. 146-6 at 3.

Nova contends that live-in caregivers hired since 2017 have been required to sign the last page of the handbook during orientation, and that a copy was sent to live-in caregivers who were hired prior to 2017.  Huliavatsenka Decl., ECF No. 146-3 at 2, ¶¶ 6–8; Mayilyan Decl., ECF No. 146-4 at 1, ¶¶ 3–6.  Nova has provided a log of signatures and dates on which caregivers received the handbook.  Defs.' Ex. B, Caregiver Handbook Log, ECF No. 146-7.  Huliavatsenka and a Nova human resources assistant also attest that they personally discussed the relevant handbook provisions with multiple live-in caregivers.  Huliavatsenka Decl., ECF No. 146-3 at 1, ¶ 5; Mayilyan Decl., ECF No. 146-4 at 2, ¶ 7.  Nova appends affidavits from nine live-in caregivers who did not opt in to this lawsuit, stating they were informed of this policy.  Pls.' L.R. 56(a)2 St. ¶ 9(d).

Plaintiffs admit that some Plaintiffs signed the handbook, and that some had personal conversations with Huliavatsenka about the policy.  *See id.* ¶ 9(a) (admitting Plaintiffs Sabina Ahmetovic, Belavus, and Fedotova signed the handbook), (b)–(c) (admitting Plaintiffs Jessica Monahan, Rutkowska, and Svitlana Voroshylova had personal conversations with Huliavatsenka).

Plaintiffs dispute, however, that all live-in caregivers were informed of the policy as a general matter; that following implementation of the 2017 provision, all new live-in care givers were given a copy and required to sign the handbook at orientation; and that copies were sent to live-in caregivers who began working prior to 2017.  *See* Pls.' Ex. 15, Fedotova Interrog. Resp. 8, ECF No. 164-2 at 135 ("No one from Nova or Southern . . . . explained that I was supposed to have an uninterrupted period of sleep time"); Pls.' Ex. 7, Belavus Dep., ECF No. 164-2 at 645, 50:21–25 ("No.  I didn't receive this [Caregiver Handbook] for sure."); Pls.' Ex. 5, Atongdem Dep., ECF No. 164-2 at 36, 22:16–24 ("No. They never send me any handouts.").[3]

The parties similarly dispute the extent to which live-in caregivers are instructed to report to Nova if they were unable to obtain eight hours of sleep (five uninterrupted), and that they should use the EVV system in making any reports.  The Caregiver Handbook contains a timekeeping policy that live-in caregivers "must notify Company within 24 hours after worked shift if Live In Caregiver did not have 8 hours of sleep time," and Nova appends a copy of guidelines about the EVV reporting system it also claims to have provided all live-in caregivers.  *See* Huliavatsenka Decl., ECF No. 146-3 at 3, ¶ 9; *see also* Mayilyan Decl., ECF No. 146-4 at 2, ¶¶ 8–10.  The nine non-party live-in caregivers confirm the received they were specifically instructed of the reporting requirements.  Pls.' L.R. 56(a)2 St. ¶ 9(a).

By contrast, Plaintiffs testified that they were never made aware of, or understood, the reporting requirements. *See* Pls.' Ex. 27, McLaughlin Dep., ECF No. 164-3 at 33, 22:7–10 ("Q. Were you aware that you could use the system to record any need for services during your scheduled sleep time?  A.  No."); Pls.' Ex. 25, Mazur Dep., ECF No. 164-3 at 19, 60:9–12 ("Q. I'm asking if you had an understanding that if you were interrupted that you were to tell your

---

[3] Plaintiffs filed all exhibits as part of their opposition to Southern's motion for summary judgment, at ECF No. 164. *See* ECF No. 165 at 1, n.1.  The Court therefore refers to exhibits in that filing.

employer about it when it happened?  A.  No, I did not know."); Pls.' Ex. 38, Spencer Dep., ECF No. 164-3 at 185, 44:3–9 (stating she did not inform Nova that she was unable to sleep through the night because "I didn't know that I was supposed to, because they didn't tell us.").  Further, there is evidence that while Plaintiffs received the EVV guidelines in paper, some, but not all, live-in caregivers received training on how to use the system.  For example, Plaintiff Yelena Savinova testified that "[t]here was no training at all" and instead she was just "given a paper," though she learned how to use the system from a fellow live-in caregiver who "attended the training."  Pls.' Ex. 34, Savinova Dep., ECF No. 164-3 at 141, 87:16–89:20.

### C.  Relationship between Nova and Southern

Southern is a formally separate home health care company, with separate addresses and telephone numbers, and timekeeping and payroll systems.  Pls.' L.R. 56(a)2 St. ¶¶ 17–18.  Neither company holds an ownership interest in the other.  *Id.* ¶ 26.  All Nova live-in caregivers must apply to Nova and be hired by Nova.  *Id.* ¶ 19.

Because Southern only allows its caregivers to work to two day per week, some Southern caregivers also work for Nova during the week.  *Id.* ¶ 22(a).  No Southern caregiver works for any home health care company besides Nova.  Pls.' Add'l Mat. Facts, ECF No. 165-1 ¶ 8.  Nova contends that, in the event that a client is told that his or her caregiver can only work for two days through Southern, the client or family would inquire of the access agencies whether the caregivers can work additional days through another company, such as Nova.  *Id.* ¶ 22(c).  It is undisputed that DSS ultimately determines whether a live-in caregiver is assigned to a specific client. *Id.* ¶ 21.

The parties vigorously dispute the degree of coordination between Nova and Southern despite their formal separation.  Nova appends affidavits from live-in caregivers stating that they came to find both companies through word of mouth in the Russian-speaking community.  *See,*

*e.g*, Kandratovich Decl., ECF No. 146-11 at 42, ¶ 24; Konstantinova Decl., ECF No. 146-11 at 64, ¶ 24.   By contrast, Plaintiffs testified that Huliavatsenka handed them applications for both companies.   For example, Plaintiff Savinova testified that she "communicated only with Aleh" and that Huliavatsenka handed out applications for both Southern and Nova.   Savinova Dep., ECF No. 164-3 at 127, 7:6–7; *id.* at 132, 39:19–25.   Similarly, Plaintiff Galyna Golova testified that "Aleh signed me up to work for him, and for this company Southern."   Pls.' Ex. 17, Golova Dep., ECF No. 164-2 at 143, 17:11–12.   Plaintiff Sabina Ahmetovic testified that the executive director of Southern, Defendant Yuliya Novikava, "informed me to go and do the paperwork with Nova, and that's how the split-up started" and she began working for both companies.   Pls.' Ex. 1, Sabina Ahmetovic Dep., ECF No. 164-2 at 14, 56:5–7.

In addition to how live-in caregivers apply to both companies, the parties dispute how live-in caregivers employed by both Nova and Southern were managed.   For example, Plaintiff Golova testified that, despite the formal separation, for both companies "all problems will be solved through Aleh." Golova Dep., ECF No. 164-2 at 149, 44:1–10.   Plaintiff Savinova testified that she "communicated only with Aleh" and was surprised to receive checks from two different companies.   Savinova Dep., ECF No. 164-3 at 127, 7:6–7; *id.* at 132, 39:19–25.   Plaintiff Fedotova testified that time off requests were handled exclusively by Nova, and Southern was not separately notified.   Fedotova Decl., ECF No. 164-2, at 131, ¶¶ 4, 6.   Plaintiffs admit, however, that live-in caregivers who worked for both Nova and Southern recorded their hours with either company separately and received separate paychecks, and that neither Nova or Southern had the authority to dictate scheduling or other issues at the other company.   Pls.' L.R. 56(a)2 ¶¶ 23, 25–26.

Plaintiffs also state that Huliavatsenka, the founder and sole member of Nova, and Novikava, the executive director of Southern, are married and live together with their child.   Pls.'

Add'l Mat. Facts, ECF No. 165-1 ¶ 4.  *See also* Chumakova Decl. ¶ 16 (stating that she saw Huliavatsenka at a restaurant to celebrate Novikava's birthday who he referred to as his "wife"); Pls.' Ex. 19, Huliavatsenka Dep., ECF No. 164-2 at 163, 38:12–39:21 (stating that Novikava lived with him in "2014, 2017" along with their son who lived there from 2015 until 2017), 69:6–17 (confirming that Huliavatsenka and Novikava began dating in 2014 and took a trip to Belarus in 2016 together with their son); Pls.' Ex. 31, Novikava Dep. 164-3 at 87, 95:11–96:22 (stating that since 2019, Novikava has used a car owned by Huliavatsenka but does not pay for use of his car and that although Huliavatsenka does not pay child support, he pays for their son's activities). Novikova testified that Huliavatsenka pays her rent to use space in one of her homes, *id.* at 89, 97:2–25, but that they have not been in a romantic relationship since 2017, *id.* at 90, 98:11–15.

## II.    PROCEDURAL BACKGROUND

The procedural background of these actions in summarized in the Court's ruling on Southern's motions for summary judgment.  *See* ECF No. 193.

For ease of reference, the Court restates the status of each of the twenty-six Plaintiffs currently in the collective.  Eighteen Plaintiffs worked only for Nova:  Portia Atongdem, Justice Asmah, Doumbia, Fuseini, Harrison, Ilina, Kalata, Jaksina, Kos, Mazur, McLaughlin, Jessica Monahan, Rutkowska, Neo Silva Seleka, Ruby Spencer, Vlasova, Svitlana Voroshylova, and Hanifa Yakubu.  Seven Plaintiffs worked for Southern and Nova:  Sabina Ahmetovic, Belavus, Lyudmyla Chumakova, Fedotova, Golova, Meri Lukianova, and Savinova.  One Plaintiff, Semir Ahmetovic, only worked for Southern.  *See generally* Pls.' L.R. 56(a)2 St., ECF No. 164-1 ¶¶ 42–92.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324).  The non-moving party, to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury finding in his or her favor.  *Anderson*, 477 U.S. at 249.  If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect

to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## IV.   DISCUSSION

### A.   Joint Employer Theory

The Court has thoroughly discussed Plaintiffs' joint employment theory in its ruling on Southern's motion for summary judgment, and incorporates that discussion by reference. *See* ECF No. 193 at 13–20. As Nova advances no arguments that are distinct from those made by Southern, and as the Court has already found that Plaintiffs have put forth sufficient evidence from which a reasonable jury could conclude that Nova and Southern are joint employers for purposes of the FLSA, Nova's motion for summary judgment is denied on this issue.

### B.   Individual Sleep Time Claims

The Court addresses Nova's arguments as to the deficiencies in individual Plaintiffs' sleep time claims below.

#### 1.   *FLSA and CMWA Overtime Legal Standards*

The FLSA mandates that, absent specific expectations, "no employer shall employ any of his employees who in any workweek . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a

rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  The CMWA sets similar overtime wage requirements, and the requirement that employers pay employees at least the Connecticut minimum wage for all hours worked.  *See* Conn. Gen. Stat.  § 31-58 *et seq.*, § 31-71a *et seq.  See also Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261 263 n.2 (D. Conn. 2002) (explaining that the CMWA "provides wage and overtime guarantees similar to the FLSA").

A dispute for overtime wages under the FLSA and CMWA is generally governed by the burden-shifting framework set forth in *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680 (1946); *see also Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 243 (2003) (applying *Anderson* to a CMWA claim).  "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *Kuebel v. Black & Decker, Inc.*, 643 F. 3d 352, 361 (2d Cir. 2011) (citing *Anderson*, 328 U.S. at 686–87); *see also Modise v. CareOne Health Servs., LLC*, 638 F. Supp. 3d 159, 174 (D. Conn. 2022).  Under *Anderson*, a plaintiff-employee must show "there is a reasonable basis for calculating damages assuming that a violation has been shown."  *Kuebel*, 643 F. 3d at 364–65.  This burden "is low and can be met by that employee's recollection alone." *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013).  If the employee satisfies this initial burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88.  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

## 2. *Sleep Time Compensation*

Sleep, as a general matter, is considered "work" for FLSA and CMWA purposes, if the employee is required to be on duty. *See* 29 C.F.R. § 785.21. If the employee is required to be on duty for twenty-four hours or more, the employer and the employee may agree to exclude up to eight hours of sleep time from hours worked when calculating compensation. The FLSA's "sleep time" regulations state that the employer and employer may agree to exclude "a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and employee can usually enjoy an uninterrupted night's sleep." 29 C.F.R. § 785.22(a). The agreement may be either express or implied, and may, but need not be, in writing. *See* U.S. Dep't of Labor, Field Assistance Bulletin No. 2016-1, Exclusion of Sleep Time from Hours Worked by Domestic Service Employees, at 5 (Apr. 25, 2016), available at https://www.dol.gov/whd/FieldBulletins/fab2016_1.pdf (last visited Mar. 14, 2024) ("The reasonable agreement must be an employer-employee agreement and not a unilateral decision by the employer, and it should normally be in writing in order to preclude any possible misunderstanding of the terms and conditions of an individual's employment.") (cleaned up)).

If the employer and employee have an agreement to exclude sleep time but "the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked." 29 C.F.R. § 785.22(b). If the employee "cannot get at least 5 hours' of sleep" as a result of the interruption or interruptions, "the entire scheduled [sleep] period is working time." *Id.*

In addition, in order for employers to exclude the sleep time of live-in caregiver, the live-in caregivers must be provided "adequate sleeping facilities" under 29 C.F.R. § 785.22(a). Although whether an arrangement is "adequate sleeping facilities" is a fact-intensive inquiry, employers generally will have provided "adequate sleeping facilities" when "the employee has

access to basic sleeping amenities, such as a bed and linens; reasonable standards of comfort; and basic bathroom and kitchen facilities (which may be shared)."   U.S. Dep't of Labor, Field Assistance Bulletin No. 2016-1, at 5.  If a live-in caregiver works for more than five days per week, the employer must provide not only "adequate sleeping facilities' but "private quarters in a homelike environment" for an agreement to exclude sleep time to be valid.  *Id.* at 3.

The CMWA sleep time provision is similar in material respects, except that the agreement to exclude sleep time from hours worked must be "in writing."  Conn. Gen. Stat § 31-76b(2)(D).

### 3.  Discussion

Perhaps because of the provision in its handbook regarding payment for sleep and break time and its position that all live-in caregivers were aware of that provision, Nova does not move for summary judgment on the ground that it had an agreement with Plaintiffs to exclude eight hours of sleep time and three hours of break time from their hours worked in a twenty-four hour shift.  Rather, it argues that certain Plaintiffs—Belavus, Doumbia, Fedotova, Kos, and Mazur— were able to get uninterrupted sleep some nights and other Plaintiffs—Sabina Ahmetovic, Doumbia, Fedotova, Golova, Ilina, Kos, McLaughlin, Rutkowska, Savinova, and Spencer— never reported sleep disturbances to Nova.  Plaintiffs, on the other hand, do challenge whether certain Plaintiffs had an agreement to exclude sleep time.

The Court finds that, first, that there are genuine disputes of material fact as to whether Plaintiffs Belavus, Doumbia, Fedotova, Kos, and Mazur had their sleep interrupted on at least one occasion in the applicable limitations period.  Second, the Court finds Nova did not have actual or constructive knowledge of sleep time disruptions experienced by Plaintiffs Doumbia, Fedotova, Ilina, McLaughlin, Rutkowska, or Spencer.  Where a particular Plaintiff has argued that he or she did not enter an agreement with Nova to exclude sleep or break time, the Court has addressed their

arguments below.  Because Nova did not move for summary judgment on the ground that these six Plaintiffs entered into a valid agreement to exclude sleep time, their sleep time claims may proceed in a limited fashion on that theory.[4]  *See* 29 C.F.R. § 785.22 ("Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked . . . .  ").  But if the jury were to find that these six Plaintiffs entered into a valid agreement to exclude sleep time, Nova would be entitled to judgment as a matter of law because they would not be able to prove an essential element of their claim for sleep time interruptions:  that they "performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *See Kuebel*, 643 F.3d at 361.

### a.   Individual Sleep Time Disruptions

First, Nova provides no authority to support the broad proposition that because Plaintiffs may have been, on the whole, more or less able to get a full night of sleep, they would not be entitled to overtime or unpaid hourly wages for those nights they were not under the FLSA or CMWA.  Given evidence in the record that all plaintiffs against whom this argument is raised experienced some sleep disruptions in the limitations period, this is no basis to grant summary judgment against Plaintiffs Belavus, Doumbia, Fedotova, Kos, and Mazur.

An opt-in plaintiff's claims under the FLSA are considered commenced when an individual plaintiff's consent to join form is filed.  29 U.S.C. § 256.  Looking backward from that date, the opt-in plaintiff is eligible to recover for unpaid overtime in the prior two years.  29 U.S.C. § 255(a).  That period is extended to three years when the employer's violation of the FLSA was "willful"

---

[4] For example, Plaintiffs note in response to Nova's argument that it did not have actual or constructive knowledge of sleep time interruptions experienced by Plaintiff Rutkowska that "there was no valid sleep time agreement because the sleeping facilities were clearly inadequate."  ECF No. 165 at 20.  In reply, Nova argues for the first time that Plaintiffs Fedotova, Ilina, and Spencer agreed to a sleep time policy by signing the caregiver handbook.  ECF No. 172 at 6–10.  But neither party moved for summary judgment on this issue of whether there was a valid agreement to exclude sleep time from Plaintiffs' pay, and Nova waived this argument by failing to raise it in its opening papers. *See Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006).

under 29 U.S.C. § 255(a). As discussed below, because there are genuine disputes of material fact as to whether Nova acted willfully, the applicable statute of limitations is three years.

i.   Plaintiff Mazur

Plaintiff Mazur's three-year statute of limitations period began in October of 2017, *see* Pls.' L.R. 56(a)2 St. ¶ 27. She began working for Nova in August of 2016 with a client who had Alzheimer's disease; that client slept through the night until the beginning of 2017. *See* Defs.' Ex. J, Mazur Dep., ECF No. 146-15 at 8, 61:2–10. As the client's disease started to progress, the client began waking Mazur up several times a night. Mazur Dep., ECF No. 164-3 at 5, 13:10–15. In approximately August or September of 2017, Mazur reported the sleep disruptions to someone named "Oleg," Mazur Dep., ECF No. 146-15 at 9, 63:2–16, but testified that she did not tell Nova that she could not get five hours of uninterrupted sleep, *id.* at 11, 65:5–13, *id.* at 15, 72:8–12 (Q: "Did you ever tell Nova that this client was interrupting your sleep during the course of the night? A: "Never, never reported it. The one time I complained was to Oleg."). Neither party has clarified who "Oleg" was or who he worked for, but the Court infers he did not work for Nova, from Mazur's testimony. In response to Nova's argument that Mazur did not experience sleep interruptions within her three-year limitations period, Plaintiffs claim that Mazur's assignment with this client "ended in January 2018," but they cite to nothing in the record to support this assertion. From Nova's excerpts of Mazur's deposition testimony, however, the Court observes that Mazur moved to her second client in February of 2018, and that she had no issues sleeping through the night when working for that second client. Mazur Dep., ECF No. 146-15 at 16, 73:18–74:5.

Nova concedes in its reply that, if a three-year limitations period applies, there are genuine questions as to whether Mazur experienced sleep interruptions with her first client between

October 28, 2017 (the beginning of her statute of limitations period) and February of 2018, when she began working with another client. *See* ECF No. 172 at 6 n.1. As the Court finds that a three-year statute of limitations period is possible, Mazur's claim survives summary judgment on this issue.

### ii.    Plaintiff Doumbia

Nova acknowledges that Plaintiff Doumbia experienced some sleep disruptions. Nova concedes that Plaintiff Doumbia experienced at least one sleepless night, ECF No. 146-2 at 14, and Plaintiffs cite to additional testimony from Plaintiff Doumbia's deposition where she described other instances where she was not able to obtain eight hours of sleep per night. *See* Pls.' Ex. 12, Doumbia Dep., ECF No. 164-2 at 118, 46:14–17 ("Q. Over the course of your time with [client] would you say you woke up on half of the nights that you were there? A. Yes."), *id.* at 119, 51:11–16 ("Q. And while caring for [client] were you able to sleep through the night? A. No . . . . Because sometimes she cried all the night. . ."). Even if Plaintiff Doumbia only experienced one sleepless night, Nova would not be entitled to summary judgment.

### iii.    Plaintiff Kos

Similarly, Nova concedes that Plaintiff Kos reported sleeping difficulties, but argues that "Nova dealt with them" after they were reported; by "dealt with," Nova means that it attempted to prevent the interruptions from happening again, not that it compensated Kos for the interruption. ECF No. 146-2 at 14. Although Nova may have potentially assisted Plaintiff Kos in avoiding additional sleep disruptions, this does not change that Plaintiff Kos may have experienced sleep time disruptions for which she was never paid; Nova does not argue that the disruption never occurred. Kos Dep., ECF No. 146-28 at 8, 30:16–20 ("Q. And after you reported the problem Aleh fixed it? A. Yes."). Summary judgment is therefore inappropriate as to Plaintiffs Kos.

### iv.   Plaintiff Belavus

Plaintiff Belavus is the only caregiver Nova avers *never* experienced any sleeping difficulties, but Nova is selectively quoting from her deposition testimony.  Nova highlights where Plaintiff Belavus (purportedly) admitted she was "not claiming or accusing that I was waking up in the night."  Belavus Dep., ECF No. 146-23 at 8–9, 32:16–33:4.  Plaintiff Belavus also testified, however, that it was part of her client's care plan that she turn the client while she was sleeping.  Belavus Dep., ECF No. 146-2 at 60, 31:20–25.  Thus, any contrary statements appear to reflect a potential misunderstanding of Plaintiff Belavus's legal claims, rather than a concession that she did not wake up at night to assist her client.  The evidence concerning Plaintiff Belavus's potential sleep time disruptions is not so vague and contradictory that summary judgment is warranted; rather, it is at most the type of testimony "that the [defendant] should test through cross-examination at trial and allow the jury to weigh in determining the credibility of [the] plaintiff's testimony in support of his . . . claims."  *Kuebel*, 643 F.3d at 364 (alterations in original) (*Allen v. Bd. of Pub. Educ. For Bibb Cnty.*, 495 F.3d 1306, 1317 (11th Cir. 2007)).

### v.   Plaintiff Fedotova

Finally, the parties do not dispute that Plaintiff Fedotova had the opportunity for over eight hours of sleep total, five of which were uninterrupted, with her clients.

The Court does not agree with Nova, however, that Plaintiff Fedotova's claims are deficient because she was able to get five hours of uninterrupted sleep and eight hours total.  Nova is referring to one of the requirements that an employer and employee may only agree to exclude sleep time when an employee "can usually enjoy an uninterrupted night's sleep," which the regulations define as "at least five consecutive hours of sleep."  29 C.F.R. § 785.22(a).  Nova's motion for summary judgment is not claiming there was a valid agreement to exclude Plaintiff

Fedotova's sleep time from pay; rather, it is claiming that Plaintiff Fedotova's sleep was effectively "uninterrupted" because she obtained at least five hours of uninterrupted sleep, and so she is not eligible for compensation, even if she did wake up during the night for short periods to assist her clients. *See* ECF No. 146-2 at 14.  In reply, Nova argues that it "is a reasonable and necessary interpretation of the sleep time regulations for situations where a caregiver is caring for someone who occasionally wakes up" that sleep time claims are barred should the plaintiff have received five hours of uninterrupted sleep and a total sleep time of at least eight hours.  ECF No. 172 at 6.  As explanation, Nova claims that some clients may have slept for more than eight hours but, because 29 C.F.R. § 785.22 allows for an employer to deduct no more than eight hours of sleep time by agreement, the regulation should be read to allow for a paid "cushion" in the employee's sleep time—*e.g.*, if there was an agreement to exclude eight hours of sleep time and the client slept for ten hours (say, 9 p.m. to 7 a.m.) but the employee woke up once at 10 p.m. for an hour and once at 5 a.m. for an hour (totaling two hours of wake time), the employee should not be paid for those two hours of waking times because she still received a total of eight hours of sleep, five of which were uninterrupted.  Even setting aside that this is an argument raised first in reply, the Court is unsure it would be appropriate to read the regulation this way.  Because the regulation only allows for exclusion of a maximum of eight hours of sleeping time, it contemplates that other time would be compensated—even, perhaps, if the employee is able to sleep some of that time because the client is resting.  The out-of-circuit cases Nova has cited involving ambulance service employees are not directly on point, and the Court declines to read the regulations to provide a paid "cushion" in the event an employee may occasionally get to sleep longer than eight hours.

Although Plaintiff Fedotova may have received at least five hours of uninterrupted sleep, she may have nonetheless have still performed work she was not adequately compensated for

during other nighttime hours.  The Court therefore cannot find that Nova is entitled to summary judgment against Plaintiff Fedotova on this basis.

b.   Actual or Constructive Knowledge

Nova also argues it is entitled to summary judgment as to Plaintiffs who never reported any sleep instances to them: specifically, Plaintiffs Sabina Ahmetovic, Doumbia, Fedotova, Golova, Ilina, Kos, McLaughlin, Rutkowska, Savinova, and Spencer.  The Court finds, as a matter of law, that Nova did not have knowledge of sleep time interruptions that may have been experienced by Plaintiffs Doumbia, Fedotova, Ilina, McLaughlin, Rutkowska, and Spencer.

To start, "[a]n employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work."  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008).  This requirement applies equally to employees who do not work at the employer's premises.  *See Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) ("Work performed off-site must be counted as time worked only if the employer knows or has reason to believe that work is being performed.").

There is no strict requirement that a plaintiff lodge a formal complaint of sleep time interruptions to establish an employer's actual or constructive knowledge.  Indeed, the Second Circuit has reversed a district court for relying too heavily on the fact that a live-in caregiver plaintiff never lodged a formal complaint. *See Kuebel*, 643 F.3d at 365.  In *Kuebel*, the Second Circuit reversed a district court for relying too heavily on the fact that a live-in caregiver plaintiff never made a formal complaint; it was sufficient that the plaintiff testified that he had "specifically complained to his supervisor" on several occasions.  643 F.3d at 365.  While the lack of a formal complaint could "conceivably hurt [the plaintiff's] credibility at trial," it did not warrant summary judgment.  *Id.*  On the other hand, the reports must be neither vague nor conclusory.  *See Mmolawa*

*v. Diligent Enterprises Inc.*, No. 19-cr-300 (VLB), 2020 WL 7190819, at *8 (D. Conn. Dec. 7, 2020) (granting summary judgment for employer where live-in caregiver plaintiff testimony claiming he had phoned in sleep time disruptions to the employer "daily" was "vague and conclusory," and refuted by the employer's comprehensive call records, which did not reflect any such complaints).

The Court finds there is a lack of evidence to support a reasonable jury finding that Nova had actual or constructive knowledge of sleep time interruptions concerning Plaintiffs Doumbia, Fedotova, Ilina, McLaughlin, Rutkowska, and Spencer.

First, when asked if she ever communicated with anyone at Nova, Plaintiff Fedotova only testified that she would call an individual named "Oleg anytime I had any questions," and that the questions concerned "every time I had to start and I finish my shift." Fedotova Dep., ECF No. No. 149-5 at 15, 50:13–51:5. There is no evidence that Plaintiff Fedotova ever discussed sleep time disruptions, as opposed to simple "questions," with "Oleg," or anyone else.[5] Plaintiffs attempt to rely on Plaintiff Rutkowska's testimony that Huliavatsenka had stated "everybody is complaining about sleep disruptions." Pls.' Ex. 33, Rutkowska Dep., ECF No. 164-2 at 115, 33:24–34:3. The Court cannot infer from this highly general statement (which is not from Huliavatsenka himself) that Huliavatsenka may have had actual or constructive knowledge of sleep time interruptions experienced by Plaintiffs Fedotova in particular.

Second, Plaintiff Ilina expressly stated that she did not complain to anyone at Nova that she needed to take a client to the restroom at night because she "thought it's part of my general duties." Defs.' Ex. V, Ilina Dep., ECF No. 146-27 at 18–19, 34:16–35:1. Plaintiffs offer no

---

[5] As discussed above, Plaintiff Mazur also stated she only reported sleep time interruptions to Oleg, but not to Nova. As Nova has not moved for summary judgment on this ground, however, the Court does not decide whether there are no genuine disputes of material fact concerning Nova's knowledge of Mazur's alleged sleep interruptions, and therefore leaves this issue for trial.

countervailing evidence; rather, they again attempt to rely on Huliavatsenka's general statement (relayed only through Plaintiff Rutkowska) that "everybody is complaining about sleep disruptions." This is insufficient to find that Nova had actual or constructive knowledge of Plaintiff Ilina's sleep time disruptions in particular.

Third, Plaintiff McLaughlin reported issues with her client to one of the state access agencies, but there is no evidence to suggest that this means Nova would have had actual or constructive knowledge. Plaintiffs refer to the fact that Plaintiff McLaughlin's interrogatory response states that "Defendant knew that the client had advanced dementia that would cause her to repeatedly wake up at night." *See* Defs.' Ex. 29, McLaughlin Interrog. Resp. 9, ECF No. 164-3 at 41. Absent additional evidence, this interrogatory response is highly conclusory and fails to create a triable issue of fact.

Fourth, Plaintiff Rutkowska reported to Nova that she was sleeping on a soiled mattress and that it was difficult to breathe because of the smell. Defs.' Ex. AA, Rutkowska Dep., ECF No. 146-32 at 11, 45:13–20. But Plaintiffs do not point to any testimony where Plaintiff Rutkowska reported interruptions to her sleep time, to tend to her clients, in particular.

Fifth, although it is also undisputed that Plaintiff Doumbia never personally reported sleeping difficulties to anyone, *see* Pls.' L.R. 56(a)2 St. ¶ 15, there is evidence that other live-in caregivers had lodged complaints about her specific clients. Plaintiffs' brief argues that Plaintiff Doumbia worked for clients C.D., R.E., and M.G., and that other caregivers reported that those clients had sleeping difficulties. *See* ECF No. 165 at 19–20. Plaintiffs have not, however, supplied evidence that Doumbia worked for those clients, nor that those clients experienced sleeping difficulties *while* Doumbia worked with them. As noted above for Plaintiff Mazur, clients' sleeping patterns can change over time, and the Court has no information about the

conditions of clients C.D., R.E., and M.G. when Plaintiff Doumbia worked with them.  Because Plaintiffs have not put forth evidence suggesting that clients C.D., R.E., and M.G. experienced sleeping difficulties while Plaintiff Doumbia worked with them, the Court cannot infer that Nova would have had actual or constructive knowledge of Doumbia's alleged sleep interruptions.  Nova is therefore entitled to summary judgment on this issue with respect to Doumbia.

The Court grants Nova's motion against Plaintiff Spencer for similar reasons.  It is undisputed that Plaintiff Spencer never reported sleeping difficulties.  *See* Pls.' L.R. 56(a)2 St. ¶ 15.  Plaintiffs' brief argues that Plaintiff Spencer's main client was M.G., *see* ECF No. 165 at 19–20, and that there is evidence that other caregivers reported that M.G. required frequent nighttime assistance.  But because Plaintiffs have not pointed to any *evidence* that Spencer worked with M.G., however, or that M.G. suffered from sleep issues when Spencer worked with this client, Nova is entitled to summary judgment on this issue with respect to Spencer.

Therefore, the Court finds there is no genuine dispute that Nova did not have actual or constructive knowledge of sleep time interruptions experienced by Plaintiffs Fedotova, Ilina, McLaughlin, Rutkowska, Doumbia, or Spencer.

Otherwise, there are genuine disputes of material fact as to whether Nova had actual or constructive knowledge of sleep time disruptions involving all remaining Plaintiffs.

i.    Plaintiff Kos

Contrary to Nova's contentions, there is evidence that Plaintiff Kos directly reported sleep time disruptions to Nova.  First off, Nova *concedes* that Plaintiff Kos reported disruptions to them. *See* ECF No. 146-2 at 14; *see supra* section IV.B(3)(a)(iii).  Absent evidence that Nova actually compensated Plaintiff Kos for these sleep disruptions, it appears Nova had actual knowledge of her uncompensated work.  Summary judgment is not warranted against Plaintiff Kos on this issue.

ii.    Plaintiff Golova

Next, there is a genuine dispute over whether Nova had actual or constructive knowledge of sleep time interruptions experienced by Plaintiff Golova.  Plaintiff Golova testified that she reported to Huliavatsenka that her first client "was waking up about ten times every night to go to the bathroom."  Golova Dep., ECF No. 164-2 at 150–51, 53:25–54:14.  Nova argues that Plaintiff Golova never complained about any other another client, but the Court does not find additional complaints necessary when it is not at all obvious that Golova's reports fell outside the limitations period.  Even if they did fall outside the limitations period, a jury may find the reports relevant evidence of Nova's knowledge during the limitations period.  Plaintiffs concede that Plaintiff Golova did not make any additional reports, but explain this was because Huliavatsenka discouraged Plaintiff Golova from reporting.  *Id.* at 87:4–8 ("What would I complain about? They would tell me if you don't want to work that ten people will fill in your place.").  The fact that Huliavatsenka may have discouraged reporting sleep disruptions evinces an awareness by Huliavatsenka that sleep disruptions were occurring.  For these reasons, summary judgment is not warranted against Plaintiff Golova on this issue.

iii.    Plaintiff Savinova

Similarly, Nova is not entitled to a summary judgment finding that it lacked actual or constructive knowledge of any sleep time interruptions of Plaintiff Savinova.  Plaintiff Savinova testified that she told Huliavatsenka that her "nights were sleepless" because her client "was up half the night."  Savinova Dep., ECF No. 164-3 at 138, 69:3–18.  Nova cites to contradictory testimony by Plaintiff Savinova, where she testified that she did not report other sleep disturbances. But in the fuller context, it appears Plaintiff Savinova "didn't report" these sleep disturbances because "[a]fter the first time I called Aleh with an issue his response was if you don't like

something, you can leave." *Id.* at 66:3–19.  The Court does not find this testimony so contradictory that it is not appropriate for "test[ing] through cross-examination at trial and allow[ing] the jury to weigh in determining the credibility of [the] plaintiff's testimony in support of his . . . claims." *Kuebel*, 643 F.3d at 364 (internal quotation marks and citation omitted).  Like Plaintiff Golova, the fact that Huliavatsenka may have discouraged Plaintiff Savinova from reporting may suggest he had constructive knowledge of her sleep disruptions.  Therefore, summary judgment as to Nova's actual or constructive knowledge of sleep time disruptions experienced by Plaintiff Savinova is not warranted.

iv.    Plaintiff Sabina Ahmetovic

It is undisputed that Plaintiff Sabina Ahmetovic never reported sleeping difficulties to Nova.  *See* Pls.' L.R. 56(a)2 St. ¶ 15.  But unlike Plaintiffs Doumbia, Fedotova, Ilina, McLaughlin, Rutkowska, and Spencer, there is other evidence upon which a reasonable jury could find that Nova nonetheless had actual or constructive knowledge of her sleep time disruptions.  Specifically, Plaintiff Ahmetovic reported an estimated "six times" to Novikava, the executive director of Southern, that her client required nighttime assistance. Sabina Ahmetovic Dep., ECF No. 164-2 at 11, 45:11–46:3.  Given that the Court has found there is a genuine dispute whether Nova and Southern are joint employers, there is also a genuine dispute whether knowledge of complaints to Southern may be imputed to Nova.

To summarize, the Court finds there are genuine disputes as to whether the sleep of Plaintiffs Belavus, Doumbia, Fedotova, Kos, and Mazur was interrupted in the applicable limitations period, but that Nova did not have actual or constructive knowledge of sleep time interruptions (if experienced) by Plaintiffs Doumbia, Fedotova, Ilina, McLaughlin, Rutkowska,

and Spencer.  This latter group of plaintiffs may proceed on their sleep time claims on only the limited theory that they did not agree to exclude sleep time from pay.

      C.  <u>Statute of Limitations</u>

Finally, the Court considers Nova's arguments concerning the statute of limitations applicable to Plaintiffs' claims.

As explained above, the statute of limitations for an opt-in plaintiff in an FLSA action is typically two years; that period is extended to three years when the employer's violation of the FLSA was "willful" under 29 U.S.C. § 255(a).[6]  Similarly, courts may not award liquidated damages for violations of the FLSA or CMWA where the defendant acted "in good faith and had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260; *see also Fuk Lin Pau v. Jian Le Chen*, No. 3:14cv841(JBA), 2015 WL 6386508, at *9 (D. Conn. Oct. 21, 2015) (discussing liquidated damages in the FLSA and CMWA context).

There are five Plaintiffs whose last day working for Nova was more than three years from the date they opted into the collective action:  Plaintiffs Fuseini, Jaksina, Kalata, and Vlasova. Pls.' L.R. 56(a)2 St. ¶¶ 27–28.  Therefore, a three-year statute of limitations would bar their claims entirely unless the Court equitably tolled the limitations period.  Similarly, five Plaintiffs' claims would be time-barred if the two-year statute of limitations applied, because they last worked for Nova more than two years before they opted into his action:  Atongdem, Ilina, Seleka, Voroshylova, and Yakubu. *Id.*

The Court finds there is a genuine dispute whether Nova's conduct was willful; thus, a three-year statute of limitations period may be appropriate.  Because the Court declines to

---

[6] The CMWA contains a two-year statute of limitations, which is extended to three years if the plaintiff files a complaint for failure to pay wages with the Labor Commissioner.  Conn. Gen. Stat. § 52-596.  As it is undisputed Plaintiffs have not filed such a complaint, their statute of limitations under the CMWA remains two years.

equitably toll the statute of limitations period further, however, the claims of Plaintiffs Fuseini, Harrison, Jaksina, Kalata, and Vlasova are time-barred.

### 1. Willfulness

"An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "Mere negligence is insufficient." *Id.* (citing *McLaughlin*, 486 U.S. at 13). It is plaintiffs' burden to show the employer's conduct was willful. *See id.* The question of willfulness is generally one for the jury. *See Kuebel*, 643 F. 3d at 366; *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 189 (D. Conn. 2020).

The Court agrees with Plaintiffs that there is a genuine dispute whether Nova's conduct was willful. Although Nova provides evidence that all live-in caregivers were required to sign handbooks containing its sleep time policy and that it provides Plaintiffs with copies of the EVV reporting system guidelines, Plaintiffs cite to countervailing evidence that live-in caregivers were not aware of Nova's policy or how to report issues. When Plaintiffs did report sleep time issues to Huliavatsenka directly, Plaintiffs testify that their complaints were ignored—and even actively discouraged. *See, e.g.*, Savinova Dep. 66:3–19 ("After the first time I called Aleh with an issue his response was if you don't like something, you can leave."); Golova Dep. 87:4–8 (testifying that Huliavatsenka told her "if you don't like something, you can leave"). The Court must "[v]iew the record in the light most favorable to [Plaintiffs]" and in light of this competing evidence, summary judgment is not warranted. *Kuebel*, 643 F.3d at 366.

Nova cites to *Garcia v. Saigon Market, LLC*, No. 15-CV-9433 (VSB), 2019 WL 4640260 (S.D.N.Y. 2019), and *Bowrin v. Catholic Guardian Society*, 417 F. Supp. 2d 449 (S.D.N.Y. 2006),

for the proposition that defendants are entitled to a finding that they did not violate the FLSA willfully when they made efforts to comply with the law.  In *Garcia*, the efforts to comply were different in kind:  the defendant retained the assistance of an outside payroll company to calculate the plaintiffs' wages, and maintained comprehensive employment records.  2019 WL 4640260 at *12.  *Bowrin* is somewhat more similar, where the defendant relied on advice from counsel, DOL regulations, and industry standards.  417 F. Supp. 2d at 472–73.  But even in *Bowrin*, the court was skeptical as the regulations relied upon did not squarely address the program in question; the defendant "did not recall personally having any *specific* conversations with counsel" about the program at issue;  and the court even noted that generally, "acting in accord with prevailing industry practice is *insufficient*[.]"  *Id.* at 473–74 (emphasis added) (internal quotation marks and citations omitted).

In this case, it is undisputed Nova acted in reliance on the state access agencies' determinations that its clients would not interrupt live-in caregivers' sleep time, and that Nova took efforts to provide live-in caregivers with copies of the EVV guidelines mandated by the state. But even though Nova may have taken *some steps* to comply with the FLSA, a jury may still find in Plaintiffs' favor.  For example, a jury may find it inadequate to have relied on the state access agencies' determinations about clients' eligibility when Nova received complaints about clients the access agencies had verified in the past.  A jury may also consider Huliavatsenka's attempts to discourage Plaintiffs from reporting disruptions as sufficient to create a genuine dispute of fact on this issue as well.  The significance of the state access agencies and guidelines on Nova's willfulness is a difficult one, and one for the jury.

Nova's purported misconduct certainly does not appear to be as severe as *Solis* v. *SCA Restaurant Corp.*, 938 F. Supp. 2d 380 (E.D.N.Y. 2013), where there was evidence that the

employer "created false records and told employees to lie to the DOL about the amount of days and hours they worked." *Id.* at 393. But if a jury found Plaintiffs' evidence credible, it could reasonably conclude that Nova violated the FLSA and did so knowingly or with reckless disregard. Nova does not "point to evidence that *conclusively* shows [their] noncompliance [if proven] was *not* willful or done with reckless disregard." *Kinkead*, 450 F. Supp. 3d at 190 (emphasis added). Thus, summary judgment is not warranted, and a three-year statute of limitations period may apply.

### 2. *Equitable Tolling*

The Court declines to equitably toll the statute of limitations period further, back to the date that any plaintiff began working at Nova. Courts have equitably tolled the two- or three-year limitation period "to avoid inequitable circumstances," *Asp v. Milardo Photog., Inc.*, 573 F. Supp. 2d 677, 697 (D. Conn. 2008), but equitable tolling is an "extraordinary measure." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). Specifically, courts equitably toll the limitation period "'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights, or h[as] asserted his rights in the wrong forum.'" *Asp*, 573 F. Supp. 2d at 697 (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)).

To that end, courts will generally equitably toll the FLSA's two- or three-year limitation period "where the plaintiff did not consult with counsel during his employment and the employer's failure to post [wage and hour posters in the workplace as required by 29 C.F.R. § 516.4] is not in dispute." *Id.* (collecting cases). That regulation requires that "[e]very employer … shall post and keep posted a notice explaining the Act . . . in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. *See also Darowski v. Wojewoda*, No. 3:15-CV-803 (MPS), 2017 WL 6497973, at *6 (D.

Conn. Dec. 19, 2017) (citing *Veltri*, 393 F.3d at 324, for the proposition that an employer's "undisputed failure to comply with their obligations under both the FLSA and the CMWA to post notices in the workplace explaining Plaintiff's rights to minimum wage and overtime compensation is an extraordinary circumstance warranting equitable tolling so long as Plaintiff otherwise lacked actual knowledge of those rights").  The CMWA requires that in the case of domestic workers, and employer must "advise the domestic worker, in writing at the time of hiring. . . how to file a complaint for a violation of the domestic worker's rights."  Conn. Gen. Stat. § 31-71f(b).

In this situation, Plaintiffs were adequately aware of their rights.  Nova offers photo evidence, and Plaintiffs have not placed in dispute, that wage and hour notices were posted in the Nova office.  *See* Huliavatsenka Supp. Aff., ECF No. 172-1 ¶¶ 3(l), (m); Ex. LL.  It appears they were placed on a large corkboard in a conference room, on another corkboard next to a desk, and on an unidentified wall.  Plaintiffs simply argue that Nova needed to post the notice somewhere where it would be more readily observable by non-office staff.  The Court cannot find that failure to post the notice in a more conspicuous place in the office warrants the extraordinary remedy of equitable tolling.  Further, the parties do not dispute that Nova's handbook was amended in 2017 to advise Plaintiffs of Nova's sleep time and break policy in writing, and that this handbook contains a "grievance procedure" employees should follow if they have complaints.  *See* Defs.' Ex. A, Caregiver Handbook, ECF No. 146-6 at 4.  The parties have put forth evidence establishing a genuine dispute as to whether all live-in caregivers received this handbook; thus, this is not a situation where it is beyond dispute that the employer failed to comply with notice requirements warranting the extreme remedy of equitable tolling.

As a result of these holdings, the claims of Plaintiffs Fuseini, Harrison, Jaksina, Kalata, Vlasova's sleep time claims are time-barred entirely, because their last day working for Nova was more than three years from when they opted into the collective action.

The Court also hereby provides notice to the parties that it will consider, pursuant to Federal Rule of Civil Procedure 56(f), whether to grant summary judgment for Defendants as to the break time claims of Plaintiffs Fuseini, Harrison, Jaksina, Kalata, and Vlasova, because such claims appear to be time-barred. While Defendants did not move for summary judgment on this basis, it appears not "genuinely in dispute" that these Plaintiffs' last day working for Nova was outside what the Court has determined is the applicable statute of limitations period. *See* Fed. R. Civ. P. 56(f)(3). As noted below, the Court will provide both parties a reasonable time to respond to this notice before granting summary judgment on this issue. *See* Fed. R. Civ. P. 56(f).

## V.    CONCLUSION

For the reasons described above, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court finds there are genuine disputes of fact pertinent to Plaintiffs' joint employer theory of liability that preclude summary judgment on the overtime claims of Plaintiffs who worked for both Nova and Southern.

As for deficiencies with individual Plaintiffs' sleep time claims, there is no genuine dispute that Nova did not have actual or constructive knowledge of potential sleep time disruptions experienced by Plaintiffs Doumbia, Fedotova, Ilina, McLaughlin, Rutkowska, and Spencer. The Court further finds that there are genuine disputes of fact on whether Nova violated the FLSA "willfully," such that a three-year statute of limitations period may be appropriate. Because the Court declines to equitably toll the statute of limitations period further, however, the sleep time claims of Plaintiffs Fuseini, Harrison, Jaksina, Kalata, and Vlasova are fully time-barred.

Plaintiffs Doumbia, Fedotova, Ilina, McLaughlin, Rutkowska, and Spencer may proceed on their sleep time claims on the theory that there was not a valid agreement to exclude sleep from their pay.

As described above, the Court is considering whether to grant summary judgment in Defendants' favor on the break time claims of Plaintiffs Fuseini, Harrison, Jaksina, Kalata, and Vlasova on statute of limitations grounds.  *See* Fed. R. Civ. P. 56(f)(3).  By **April 12, 2024**, Plaintiffs may file a memorandum of law and any supporting exhibits demonstrating why Defendants should not be granted summary judgment on this basis.  Defendants may respond within **fourteen days** after Plaintiffs' submission.  No reply briefing will be permitted.

Setting aside the break time claims of Plaintiffs Fuseini, Harrison, Jaksina, Kalata, and Vlasova—the fate of which remains to be decided—the break time claims of all other Plaintiffs will proceed to trial.

The Court will schedule a status conference to set dates for pretrial submissions and trial.


**SO ORDERED** at Hartford, Connecticut, this 29th day of March, 2024.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE