## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YELENA SAVINOVA *and* YEMILIYA MAZUR, *individually and on behalf of others similarly situated*, Plaintiffs, | ) ) ) ) | 3:20-cv-1612 (SVN) |
| v. | ) ) | |
| NOVA HOME CARE, LLC, SOUTHERN HOME CARE SERVICES, INC., ALEH HULIAVATSENKA, *and* YULIYA NOVIKAVA, Defendants. | ) ) ) ) ) | March 29, 2024 |

## JOINT RULING ON DEFENDANTS' MOTIONS TO DECERTIFY COLLECTIVE FLSA ACTION AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Sarala V. Nagala, United States District Judge.

Plaintiffs are a conditionally certified collective of twenty-six live-in caregivers employed by Defendant Southern Home Care Services, Inc. ("Southern"), Defendant Nova Home Care, LLC ("Nova"), or both between October 27, 2017, and the present, seeking to recover unpaid overtime compensation pursuant to Section 16 of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and unpaid hourly wages and overtime compensation pursuant to Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §§ 31-58 *et seq.*, 31-71a *et seq.* Nova and Southern move to decertify the FLSA collective action. ECF Nos. 147 (Nova), 150 (Southern). Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move to certify a class of all live-in caregivers who worked for Nova and Southern between October 21, 2018, and the present, and who had any workweeks split between the two companies while on the same live-in assignment. For the following reasons, Southern and Nova's motions for decertification are DENIED, and Plaintiffs' motion for class certification is DENIED.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

The Court has set forth the relevant facts in detail in its rulings on Defendants' motions for summary judgment.  *See* ECF Nos. 193, 194.  It therefore assumes the parties' familiarity with the factual background.

Named Plaintiffs Yelena Savinova and Yemiliya Mazur filed the present three-count action in federal court on October 27, 2020, on behalf of themselves and other similarly situated live-in caregivers who worked for Southern and Nova, seeking to recover unpaid overtime compensation under Section 16(b) of the FLSA and unpaid hourly wages and overtime compensation under the CWMA.  Compl., ECF No. 1.  Plaintiffs bring three claims.  First, Plaintiffs who worked for both Southern and Nova bring "overtime claims" alleging that the companies artificially split workweeks in order to avoid paying one and one-half times Plaintiffs' regular hourly rate for all hours that exceeded forty hours in a one-week period.  Second, Plaintiffs bring "sleep time claims" alleging that both Southern and Nova improperly excluded time spent sleeping absent a valid agreement to do so and/or did not pay for time spent working when sleep was interrupted; therefore, Plaintiffs are entitled to recover any hourly wages and overtime compensation owed when accounting for this time spent working.  Third, Plaintiffs bring "break time claims" against Nova only, alleging that Nova improperly deducted additional time from Plaintiffs' hourly wages and overtime compensation for purported personal or meal breaks.[1]

The Court (Shea, U.S.D.J.) first conditionally certified a collective of live-in caregivers who worked for Nova but denied conditional certification with respect to Southern.  ECF No. 47.  Named Plaintiffs Savinova and Mazur had both submitted declarations that described "the work

---

[1] Although the break time claims are allegedly generally in the complaint, Plaintiffs do not dispute Southern's statement in its motion for summary judgment that this claim is only asserted against Nova, because Southern does not deduct break time as part of hours worked.  *See* ECF No. 149-2 at 23 n.19.

that they performed as live-in homecare workers, how they were paid for that work by Nova, and how Nova allegedly failed to pay for regular and overtime hours." *Id.* Only Plaintiff Savinova worked for Southern and referred to Southern in her declaration. In a "lone sentence," Plaintiff Savinova stated "I have spoken to several other live-in homecare workers employed by Nova and [Southern] and they each reported being subjected to the same or similar practices as I have herein described." *Id.* (quoting Savinova Decl., ECF No. 22-2 at 17). This conclusory declaration, which did not even describe the "similar practice," did not warrant conditional certification of individuals who worked for Nova and Southern. ECF No. 47.

Three months later, Judge Shea granted a renewed motion for conditional certification of a collective of both Nova and Southern live-in caregivers. Plaintiffs had submitted additional declarations from other live-in caregivers claiming they had workweeks split between Nova and Southern while working for the same client, and that they would not be paid for sleep time interruptions. ECF No. 60. The case was transferred to the undersigned, and the Court authorized notice to be sent to all current and former live-in caregivers of Southern and/or Nova between October 27, 2017, and the present. ECF No. 75.

Thereafter, twenty-four Plaintiffs opted in to join the collective, forming a collective of twenty-six Plaintiffs: the two named Plaintiffs, Savinova and Mazur, and twenty-four opt-in Plaintiffs. Eighteen Plaintiffs, including named Plaintiff Mazur, worked only for Nova (Asmah, Atongdem, Doumbia, Fuseini, Harrison, Ilina, Jaksina, Kalata, Kos, Mazur, McLaughlin, Monahan, Rutkowska, Seleka, Spencer, Vlasova, Voroshylova, and Yakubu) (the "Nova-only Plaintiffs"); seven Plaintiffs, including named Plaintiff Savinova, worked for both Southern and Nova (Sabina Ahmetovic, Belavus, Chumakova, Fedotova, Golova, Lukianova, and Savinova) (the "Southern-Nova Plaintiffs"); and one Plaintiff worked only for Southern (Semir Ahmetovic)

(the "Southern-only Plaintiff").  Southern and Nova now move for decertification of the FLSA collective.  ECF Nos. 147, 150.   Plaintiffs move for class certification of only their CMWA overtime claims premised on the joint employer theory pursuant to Federal Rule of Civil Procedure 23.  ECF No. 153.

\*\*\*

## DEFENDANTS' MOTIONS FOR DECERTIFICATION OF THE FLSA COLLECTIVE

The Court first addresses Southern and Nova's arguments for decertification of the FLSA collective.

### I.    LEGAL STANDARD

Under the FLSA, employees may bring "collective actions" which allow them to "sue on behalf of themselves and other employees who are 'similarly situated.'"  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243–44 (2d Cir. 2011) (citing 29 U.S.C. § 216(b)).  The FLSA requires that other plaintiff-employees "affirmatively consent to join a 'collective action' in order to assert a claim."  *Id.* at 244 (same); *see* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [action under section 216(b)] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  This "opt-in" procedure—in contrast to the "opt-out" procedure for class actions—is a distinct statutory requirement for FLSA collective actions.  *See Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 262 (D. Conn. 2020) ("Unlike a Rule 23 class action where potential class members are parties to the suit unless they affirmatively opt out, an FLSA collective action requires plaintiffs to affirmatively opt in to the suit to benefit from the judgment.").

The Second Circuit has endorsed a two-step method for determining whether an action should be certified as a collective action under the FLSA, set forth in *Myers v. Hertz Corp.*, 624

F.3d 537 (2d Cir. 2010).  The first step is "conditional certification."  The court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Id.* at 555.  Otherwise stated, plaintiffs must "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Id.* (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)).  This allows the court to identify "any 'similarly situated' potential plaintiffs who should receive notice of the pending action and have an opportunity to opt in."  *See also Zhu*, 424 F. Supp. 3d at 263 (citing *Myers*, 624 F.3d at 555).

At the second step of the certification process, the court determines "on a fuller record . . . whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Myers*, 624 F.3d at 555.  The collective may be "'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice."  *Id.*

The Second Circuit ruled on the standard courts should apply at *Myers'* second stage in *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020).  *Scott* rejected the "ad hoc" and "sliding scale" approaches some courts applied because they resembled the "unrelated" and "more stringent" requirements for class certification under Federal Rule of Civil Procedure 23.  *See id.* at 520.  Under the "ad hoc" approach, courts considered the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment."  *Id.* at 517 (quoting *Buehlman v. Ide Pontiac*, 345 F. Supp. 3d 305, 313 (W.D.N.Y. 2018)).  Under the sliding scale approach, district courts "import[ed] the more

rigorous requirements of Rule 23 into the similarly situated inquiry in rough proportion to the number of plaintiffs who have chosen to opt-in." *Id.* at 518.

The Second Circuit clarified that at *Myers*' second stage, courts need only consider "whether [the named plaintiffs and opt-in plaintiffs] share one or more similar questions of law or fact material to the disposition of their FLSA claims." *Id.* at 521. Courts "shall take into account" whether a question "is common to all [collective] members because it can be answered with common proof" from discovery. *Id.* (internal quotation makes and citation omitted). The common question need not "predominate" as a common question must in the class certification context. *See id.* Any "differences will not prove fatal to the 'similarly situated' analysis in the same way [they may] prove[ ] fatal to the predominance inquiry" under Federal Rule of Civil Procedure 23. *Id.* at 521–22. Otherwise stated, if after conditional certification, the "named plaintiffs and opt-in plaintiffs are similar in some respects material to the disposition of their claims, collective treatment may be to that extent appropriate, as it may facilitate collective litigation of collective plaintiff's claims." *Id.* at 522.

## II.   DISCUSSION

The Court finds that all Southern-Nova and Nova-only Plaintiffs share one or more questions of law or fact material to the disposition of their FLSA claims, and so collective treatment remains appropriate. Although it is a closer question, the single Southern-only Plaintiff also meets this low threshold.

### A.   Southern-Nova, Nova-only, and Southern-only Plaintiffs

The Court first addresses, and rejects, Southern's argument that the collective action should not continue as conditionally certified because Plaintiffs are asserting different claims against different defendants. To recap, the Southern-Nova Plaintiffs are pursuing an FLSA claim against

both Southern and Nova on the theory that both companies are joint employers, and their practice of having employees split weeks between the two companies to allegedly circumvent the requirement to pay employees for overtime after they work forty hours in a week is unlawful. Separately, Plaintiffs are pursuing a claim that both Southern and Nova inappropriately deducted compensation for eight hours of sleep time (or, if there was an agreement to exclude sleep time, did not pay for all sleep time interruptions), and that Nova inappropriately deducted compensation for up to three hours of break time.

Southern argues that "Plaintiffs' ability to proceed as a collective is dependent upon the Court finding that [Southern] and Nova should be treated as joint employers."  ECF No. 150 at 20. Even if a joint employment relationship is found to exist, however, Southern contends this action is essentially comprised of three separate collectives of Southern-Nova, Nova-only, and Southern-only Plaintiffs.  Therefore, according to Southern, Plaintiffs cannot "produce 'substantial evidence of a single decision, policy, or plan' that affects *all* of the opt-in plaintiffs" and Plaintiffs cannot continue as a collective action.  *Id.* (emphasis in original) (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409–410 (W.D. Pa. 2000)).

The Court finds that collective treatment remains appropriate as to all Plaintiffs.  First, the Court has found that there is a genuine dispute whether Southern and Nova are joint employers for FLSA purposes, *see* ECF No. 193, which Southern concedes would render the case suitable for collective treatment, at least in part.  Named Plaintiff Savinova and the six opt-in Plaintiffs who remain as Southern-Nova Plaintiffs share at least one critical similar question of law and fact: whether Southern and Nova were joint employers, such that hours worked for both companies should be aggregated for purposes of assessing when overtime pay must begin.

Plaintiffs have identified one post-*Scott* case, *Mongollan v. La Abundancia Bakery & Restaurant Inc.*, No. 1:18-cv-03202 (GBD) (SDA), 2020 WL 8261571 (S.D.N.Y. Sept. 30, 2020), involving similar allegations that separate defendant-restaurants had employed the plaintiffs as part of a single, joint enterprise and failed to compensate plaintiffs for all time worked.  Not only did some plaintiffs work at different restaurants from one another, they also performed different jobs entirely (ranging from baker, to dishwasher, to counterperson).  On summary judgment, the court had held there were genuine issues of material fact as to whether the defendant-restaurants— which operated under the same trade name but may have had separate ownership and management—should be considered a "single, integrated employer."  *Id.* at *9–10, *report and recommendation adopted in part, rejected in part in* 2021 WL 1226923 (S.D.N.Y. Mar. 31, 2021). Notwithstanding the open question of whether the defendant-restaurants were part of the same enterprise, the court denied defendants' motion for decertification because plaintiffs made a "persuasive showing . . . that the Defendant restaurants were operated as a single enterprise" and that they were subject to a common policy and practice.  *Id.* at *12.  The Court takes a similar approach here.  Indeed, it would make little sense to dismiss any of Plaintiffs' claims without prejudice, so that they may assert their claims in a separate action, when there is evidence from which a jury could conclude that Southern and Nova may have operated as a single, joint enterprise in Connecticut.

The Court does not find Southern's cases on this point persuasive, as none squarely deal with the situation where some members of the collective have not been employed by one defendant employer.  Further, they all apply the more stringent approach to decertification that the Second Circuit expressly disavowed in *Scott*.  The cases from within this circuit even cautioned that "the Second Circuit has yet to endorse a set of criteria appropriate for consideration on a motion for

decertification," before applying the now-defunct ad hoc approach.  *See DeSilva v. North Short-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 320–23 (E.D.N.Y. 2014) (applying the ad hoc approach and granting decertification of a collective of more than 1,100 plaintiffs on account of individualized differences); *see also Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (noting "the Second Circuit has yet to prescribe a particular method for determining whether members of a class are similarly situated" before applying the ad hoc approach and granting decertification of 4,100-plaintiff collective).  The out of circuit cases apply the inapplicable ad hoc approach as well.  *See Smith v. T-Mobile USA Inc.*, No. CV-05-5274 ABC, 2007 WL 2385131, at *4 (C.D. Cal. Aug. 15, 2018) (applying the ad hoc approach); *Proctor v. Allsups Conveniences Stores*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (same).

Second, members of an FLSA collective need not bring identical claims or identify a singular policy that affects all plaintiffs uniformly; rather, the plaintiffs need only "share one or more similar questions of law or fact material to the disposition of their FLSA claims," and the Court must "take into account" whether there is a question that may be answered with "common proof."  *Scott*, 954 F.3d at 521 (internal quotation marks and citation omitted).  It is telling that Southern does not cite *Scott*, the leading Second Circuit decision on decertification, as it forecloses Southern's arguments here.[2]

To begin, all Southern-Nova and Nova-only Plaintiffs, including named Plaintiff Mazur, worked for Nova.  Therefore, questions about whether Nova's sleep time and break time policies and practices complied with the FLSA are no doubt common and material to both sets of plaintiffs and will be answered with common proof.  Although the Nova-only Plaintiffs do not have overtime claims against Southern like the Southern-Nova Plaintiffs, the question under *Scott* is simply

---

[2] Indeed, the headings of Southern's motion for decertification track the three-factor ad hoc approach explicitly rejected in *Scott*.

whether the plaintiffs share one or more similar questions of law or fact material to the disposition of their claims.  Plaintiffs do through their sleep time claims against Nova.

Whether the single Southern-only Plaintiff should remain in this collective action a closer question, but the Court finds that Plaintiff Semir Ahmetovic also meets *Scott*'s low threshold.  This Plaintiff shares questions of law and fact with the Southern-Nova Plaintiffs, including named Plaintiff Savinova, such as whether they entered into a valid agreement with Southern to exclude sleep time from pay; whether Southern had a policy or practice of not paying its live-in caregivers for sleep time interruptions; and whether Southern may have done so willfully.  The Court does not read *Scott* to require that all Plaintiffs have identical common issues with all other Plaintiffs; rather, one common issue of law or fact binding opt-in plaintiffs to named plaintiffs suffices to render collective treatment appropriate to the extent of the similarity.  *Scott*, 954 F.3d at 516.  This finding is consistent with Congress's goal to provide "the advantage of lower individual costs to vindicate rights by the pooling of resources" in collective actions.  *Id.* (quoting *Hoffman-LaRoche Inc.*, 493 U.S. at 170).

In short, although the Southern-Nova Plaintiffs assert additional claims beyond those asserted by the Nova-only Plaintiffs and Southern-only Plaintiff, there are similar questions material to the disposition of all Plaintiffs' claims, and all Plaintiffs are similarly situated in some respects.  The Court declines to decertify the collective on this basis.

### B. Individualized Differences

Next, Southern and Nova highlight individualized differences among the Plaintiffs, contending that these differences warrant decertification.  For example, the companies argue there will be individualized questions as to whether each Plaintiff entered into a valid agreement to exclude sleep time and, in Nova's case, break time; over the length and frequency of each

Plaintiff's unpaid work for either or both companies; and whether each Plaintiff reported sleep disruptions. But the fact that Plaintiffs' experiences are highly individualized does not warrant decertification. For similar reasons as above, the Court cannot find the individualized differences warrant decertification under *Scott*.

Plaintiffs cite several cases where an FLSA collective has proceeded past *Myers*' second stage despite the individualized issues that cases for uncompensated work often present. For example, in *Dieffenbauch v. Rhienhart Railroad Construction, Inc.*, No. 8:17-CV-1180 (LEK/CFH), 2021 WL 365850 (N.D.N.Y. Feb. 3, 2021), forty-three railroad construction and maintenance workers claimed they were not compensated for work-related travel time. Although the plaintiffs each traveled various distances to and from work, plaintiffs had alleged they were subject to the same "No Pay for Travel" policy, and "[u]nder *Scott*, only a single common issue of law or fact related to the disposition of an FLSA claim is required to deny decertification." *Id.* at *4.[3] Similarly, in *Foster v. City of New York*, No. 14-cv-4142 (PGG) (RWL), 14-CV-9220 (PGG) (RWL), 2020 WL 8173266 (S.D.N.Y. Oct. 30, 2020), the court declined to decertify a collective action of more than 2,000 administrative employees subject to the same time-keeping and compensation policy. The court found that the plaintiffs "more than meet the *Scott* standard of requiring 'a' common issue of fact or law that is dispositive to their FLSA claims." *Id.* at *10. *See also Perry v. City of New York*, 522 F. Supp. 3d 433, 442 (S.D.N.Y. Aug. 5, 2021) (collecting cases where "[c]ourts have found opt-in plaintiffs similarly situated in large off-the-clock cases despite the individualized issues such cases present where individualized testimony into damages is required"). In short, individualized differences amongst collective members in cases seeking

---

[3] In *Dieffenbauch*, the district court went on to consider the ad hoc factors, despite that *Scott* called them into significant question. *See* 2021 WL 365850, at *4–5. The Court does not believe that it is necessary to examine the ad hoc factors after *Scott*.

the payment of wages for uncompensated work generally does not warrant decertification after *Scott*.

Once again, Southern and Nova's granular arguments about the Plaintiffs' individual differences reflect the ad hoc approach disavowed in *Scott*. Neither of the two cases identified where courts have granted decertification after *Scott* counsel in favor of decertification here. First, *Scott* was decided shortly before briefing concluded in *Vecchio v. Quest Diagnosis*, No. 16 Civ. 5165 (ER), 2020 WL 5604080 (S.D.N.Y. Sept. 18, 2020). At that time, "[t]he effect of *Scott* on the ad hoc approach [was] unclear." *Id.* at *11. Therefore, the court's decision rested on individualized differences amongst the plaintiffs. *See id.* at *11–14. But since *Vecchio*, courts have recognized that "the Second Circuit's criticism of the ad hoc approach makes clear that a district court pursuing such as approach—in the face of *Scott*—would likely be committing error." *Foster*, 2021 WL 1191810, at *7 n.9.

The second case, *Julian v. MetLife, Inc.*, No. 17-cv-957 (AJN), 2021 WL 3887763 (S.D.N.Y. Aug. 31, 2021), cites *Vecchio*, and the Court questions whether it faithfully applied *Scott*. In *Julian*, all plaintiffs' claims rested on a determination of whether they were exempt from overtime pay requirements under the "administrative employee" exemption of the FLSA. *Id.* at *3. The court noted that although all plaintiffs held the same position of Claim Specialist, discovery revealed that the critical question of whether the employee "exercises discretion and independent judgment" in performing their primary duty would be highly individualized to each plaintiff, and would not depend on evidence that was common to the collective. *Id.* In concluding rather summarily that the plaintiffs' factual similarities were not "material to the disposition of their FLSA claims," the court cited to *Vecchio* and *Mike v. Safeco Insurance Co. of America*, 274 F. Supp. 2d 216, 220 (D. Con. 2003), which predates *Scott*. For those reasons, the Court does not

find the logic of *Julian* persuasive and it, of course, is not binding authority. In the present case, all Plaintiffs were subject to a common practice or policy by Southern and/or Nova which they allege violated the FLSA. For these reasons, the Court cannot find Plaintiffs' individualized differences warrant decertification.

The Court is mindful of the logistical challenges a trial of Plaintiffs' claims would present, as each Plaintiff would need to testify about whether they agreed with their employer to exclude sleep time and, if so, whether they suffered sleep interruptions about which they notified their employers. As *Scott* recognizes, however, the FLSA imposes a bar "lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." 954 F.3d at 520 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018)). Although the Court is not committing to the structure of any trial(s) at this juncture, it notes it would be far more efficient for the Court to conduct even two trials—one for the Southern-Nova Plaintiffs and Plaintiff Semir Ahmetovic, and one for the Nova-only Plaintiffs—(limited to the issues reserved for trial by the summary judgment rulings) than to conduct twenty-six separate trials brought by each individual Plaintiff, at which at least some of the evidence would undoubtedly overlap.

***

## PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION

Plaintiffs also move pursuant to Federal Rule of Civil Procedure 23 for certification of a class of live-in caregivers who worked for both Southern and Nova between October 21, 2018, and the present, and who had any workweeks spilt between the companies while working on the same assignment.  The Court DENIES Plaintiffs' motion for the reasons set forth below.

### I.    LEGAL STANDARD

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  Federal Rule of Civil Procedure 23 generally permits one or more members of a class to sue as representatives for all members of the class if certain requirements are met.  "[T]he requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for" certifying a collection action under the FLSA.  *Scott*, 954 F.3d at 520.

First, the Second Circuit has held that Rule 23 contains an "implicit threshold requirement" that the members of the proposed class be readily identifiable, which is often characterized as an "ascertainability" requirement.  *In re Petrobras Secs.*, 862 F.3d 250, 264 (2d Cir. 2017) (internal quotation marks and citation omitted).  In particular, the court must determine that the proposed class is "defined using objective criteria that establish a membership within definite boundaries." *Id.* at 269.  The purpose of this "modest" requirement is to "preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.*

Once the court has determined that the proposed class is properly defined, Rule 23(a) permits class certification if four primary requirements are met: (1) if "the class is so numerous that joinder of all members is impracticable," (2) if "there are questions of law or fact common to

the class," (3) if the claims of the representative parties are "typical" of the claims of the class, and (4) if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Those four requirements, respectively dubbed "numerosity, commonality, typicality, and adequate representation," serve to "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotation marks and citation omitted).

Finally, after those four prerequisites have been met, the action must also "qualif[y] under at least one of the categories provided in Rule 23(b)." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001)). Rule 23(b)(3), which would govern the proposed class here, requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This predominance requirement is satisfied if "(1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof." *In re Petrobras Secs.*, 862 F.3d at 270 (cleaned up). The class action device is "superior" to other methods of adjudicating the dispute if it would "facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers*, 624 F.3d at 547 (2d

Cir. 2010).  This burden is not "a mere pleading standard"; rather, a plaintiff "must affirmatively demonstrate his compliance" with the requirements that "there are *in fact* sufficiently numerous parties, common questions of law or fact," typical claims, and adequate representation.  *Dukes*, 564 U.S. at 350 (emphasis in original).  Similarly, a district court can certify a class only if it is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161.  Indeed, the district court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met," and it must resolve factual disputes and find the necessary facts relevant to each requirement.  *Shahriar*, 659 F.3d at 251 (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)).

## II.     DISCUSSION

The Court finds that Plaintiffs have met the implicit threshold requirement of properly defining the proposed class.  But the Court cannot find that the first requirement for class certification under Rule 23, numerosity, is met.  Plaintiffs' motion for class certification is denied on this basis, without prejudice.

### A.  Class Definition (Ascertainably)

Plaintiffs define the proposed class more narrowly than the existing FLSA collective, as it is limited to those employees who split a workweek between Southern and Nova:  Plaintiffs seek certification of a class of "all homecare workers who worked for Nova and Southern between October 21, 2018, and the present, and who had any workweeks split between Nova and Southern on the same live-in assignment."  ECF No. 153-1 at 5.  Southern interprets Plaintiffs' motion as only seeking certification on the overtime claims premised on the joint employment theory, rather than Plaintiffs' other sleep time claims.  Because the sleep time claims are only mentioned "once in passing" in Plaintiffs' motion, Southern claims Plaintiffs have "abandoned any effort to certify

a Rule 23 class based on alleged sleep time violations."  *See* Defs.' Opp. Mot. Class Cert., ECF

No. 160 at 2 n.2.  Plaintiffs confirm in reply that they are only seeking class certification as to the

overtime claims based on the joint employer theory.  Pls.' Reply Mot. Class Cert., ECF No. 167

at 5 n.2.

The Court finds that this proposed class is adequately defined as it uses "objective criteria

that establish a membership within definite boundaries."  *In re Petrobras Secs.*, 862 F.3d at 269.

The class is defined using specific dates, employers, and the fact of "workweeks split between

Nova and Southern on the same live-in assignment."  It is therefore "administratively feasible . . .

to determine whether a particular individual is a member."  *Brecher v. Republic of Argentina*, 806

F.3d 22, 24 (2d Cir. 2015) (internal quotation marks and citation omitted).  This is not a basis to

deny Plaintiffs' motion for class certification.

B. <u>Numerosity</u>

The Court cannot find, however, that Plaintiffs have satisfied the numerosity requirement

by a preponderance of the evidence.  Courts presume numerosity at a level of forty potential class

members.  *See Pa. Public Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120

(2d Cir. 2014); *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n.20 (2d Cir. 2021).  Plaintiffs

have not shown by a preponderance of the evidence that there are at least forty class members, nor

that "the difficulty or inconvenience of joining all members of the class makes use of the class

action appropriate."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco

Managed Care, LLC*, 504 F.3d 229, 244 (2d Cir. 2007).

Plaintiffs claim that of the total 122 Southern employees who provided live-in caregiving

services between October of 2017 and January of 2022, ninety-five also provided live-in

caregiving services to Nova during the same period.  It is true that, at ninety-five, the proposed

class would be above the forty potential members at which courts presume numerosity. But Plaintiffs are unable to identify how many of the ninety-five employees who worked for both Southern and Nova during this multi-year period worked for Southern and Nova *in the same week* and *for the same client*—criteria which are included in the contours of the class they wish to certify. It is possible that many of the ninety-five employees worked for Nova in one week, and for Southern in another week (or another month, or even year). It is just as possible that the employees worked for different clients during the same week. Absent any factual basis to determine how many of the ninety-five employees worked for both Southern and Nova in the same week and for the same client, the Court cannot find that Plaintiffs have met their burden to show the presumption of numerosity of applies.

The only evidence that Plaintiffs offer in support of numerosity are the same declarations from Plaintiffs Savinova, Chumakova, Lukianova, and Fedotova that they relied on at the conditional certification stage. *See* ECF Nos. 153-3 through 153-7 (declarations signed in February and April of 2021). This was sufficient to meet the low threshold for conditional certification of the FLSA collective, but it is not sufficient to meet Plaintiffs' heightened burden at the class certification stage. At most, absent any evidence that numerosity is met, Plaintiffs reason that "of the seven collective action plaintiffs and opt-in plaintiffs who worked for both Nova and [Southern], each and every one of them had their workweeks split." ECF No. 167 at 3. But the Court cannot generalize from the fact that 100 percent of the seven Southern-Nova Plaintiffs had their workweeks split, that a sufficient number of the ninety-five individuals who worked for both Southern and Nova over a span of over four years also did as well, such that the use of the class mechanism is appropriate.

The Court is mindful that the court certified a class of caregivers under similar logic in *Kinkead v. Humana of Home, Inc.*, 330 F.R.D. 338 (D. Conn. 2019), but additional facts there allowed the court to draw a reasonable inference that numerosity had been met (and the defendant did not contest numerosity). In *Kinkead*, 190 plaintiffs opted into an FLSA collective after notice was sent to 48 Connecticut-based and 189 New York-based caregivers. Plaintiffs then sought certification of a Connecticut class and a New York class. The Court granted certification of the Connecticut class, and limited the proposed New York class to only caregivers who worked live-in shifts. In finding that the limited New York class still met the numerosity requirement, the court made a "common sense assumption" based on percentages: because 93% percent of the New York opt-in plaintiffs had worked a live-in shift, applying this percentage to the 189 New York caregivers who were potential members of the class would yield approximately 175 putative class members who had worked a live-in shift. *Id.* at 347. Further, there was also evidence that the defendant may have undercounted the pool of 189 New York employees at the outset. *Id.* Thus, Judge Meyer could easily conclude that there would be at least forty members of the putative New York class. *Id.*

By contrast, the number of potential class members here is smaller. Even assuming that 100 percent of individuals worked for both Southern and Nova in the same week for the same client, the starting point is ninety-five caregivers—nearly half the estimated 175 putative class members from which the *Kinkead* court was able to assume that the presumptive forty-member threshold had likely been met. It is also far more speculative to presume that 100 percent of the live-in caregivers who worked for Nova and Southern over the course of four years did so in the same week and on the same live-in assignments than it was for the *Kinkead* court to simply apply a percentage to the binary question of whether a caregiver had, or had not, worked at least one

live-in shift.  There are many more variables at play in this case, including when the employees

worked for each company, whether they worked for the companies in the same week, and whether

they also worked for the same client in the same week.  With the addition of each of these variables,

the pool of potential class members very likely narrows.  For these reasons, the Court cannot find

by a preponderance of the evidence that at forty-member class exists, creating a presumption of

numerosity.[4]

Courts in this district have concluded that, if the potential class consists of between twenty-

one and forty members, it falls into a "gray area" requiring application of the five factors from

*Robidoux v. Celani*, 987 F. 2d 931, 936 (2d Cir. 1993), relevant to the practicality of joinder:

whether there is "judicial economy arising from the avoidance of a multiplicity of actions,

geographic dispersion of class members, financial resources of class members, the ability of

claimants to instate individual suits, and requests for injunctive relief which would involve future

class members."  *See, e.g., Grant v. N.Y. Times Co.*, 329 F.R.D. 27, 31 (S.D.N.Y. 2018).  Plaintiffs

make no mention of the *Robidoux* factors in their opening brief, relying entirely on an expectation

that the presumption of numerosity would apply.  ECF No. 167 at 4.[5]

Plaintiffs do mention the *Robidoux* factors in passing in their reply brief.  While the Court

need not consider arguments raised for the first time in reply, *see ABN Amro Verzekeringen BV v.

Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007), it addresses them in the spirit

of completeness (assuming this case would fall into the "gray area" of twenty-one to forty potential

---

[4] The Court questioned Plaintiffs' counsel at oral argument about why Plaintiffs did not seek discovery from Defendants to attempt to ascertain the dates members of the putative class worked for Southern and Nova and how many such members worked for the same client in the same week.  Counsel suggested that the companies may not have produced such information.  But Plaintiffs never asked, and would have retained the ability to file a motion to compel discovery if they believed Defendants had inappropriately withheld such information.  That Plaintiffs cannot meet their burden, therefore, lies squarely on their own shoulders.
[5] Plaintiffs refer to the factors as the "*Morgan Stanley*" factors after *Pennsylvania Public School Employees' Retirement System v. Morgan Stanley & Co., Inc.*, 772 F.3d 111 (2d Cir. 2014).  This case was, in turn, referencing the *Robidoux* factors.  *See id.* at 120.  The Court therefore refers to them as the *Robidoux* factors here.

class members), and nonetheless finds the arguments unpersuasive.  First, while some judicial economy might always be gained in avoiding a multiplicity of actions, the Court is not aware of any other pending actions raising these claims, and the Court would be left to speculate how much economy might be gained here.  Second, all putative class members are located in Connecticut, and there is therefore little geographic dispersion—suggesting that joinder would not necessarily be impracticable.  As for the fifth factor, there is no request for injunctive relief that would involve future class members; Plaintiffs seek damages in this action, and only include a highly general prayer for relief that the Court "[a]award such other legal and equitable relief as the Court deems appropriate."  *See* ECF No. 1 at 12.  The Court is mindful that the putative class members have limited financial resources and so may not have an ability to bring suit individually, but cannot find this outweighs the other factors.

Because the Court finds that Plaintiffs have failed to meet the numerosity requirement, it denies Plaintiffs' motion for class certification without prejudice on this basis, and need not reach the other Rule 23 requirements.  *See Liberian Comm. Assoc. of Conn. v. Malloy*, No. 3:16-cv-00201 (AVC), 2016 WL 10314574, at *8 (D. Conn. Aug. 1, 2016) ("Because the court concludes that the proposed class is too speculative to be sufficiently numerous, it is not necessary for the court to continue its analysis of the remaining class certification requirements."); *Fracasse v. People's United Bank*, No. 3:12-CV-670 (JCH), 2013 WL 3049333, at *4 (D. Conn. June 17, 2013) ("Because numerosity is not met in the present case, the court declines to reach the other Rule 23(a) requirements or the Rule 23(b)(3) issues of predominance and superiority."); *Huntley v. Law Office of Richard Clark, PLLC*, 262 F.R.D. 203, 205 (E.D.N.Y. 2009) ("With the Plaintiff

having failed to establish numerosity, the Court need not analyze whether the other requirements of Fed. R. Civ. P. 23 have been met.").

## **CONCLUSION**

For the reasons explained in this Ruling, Southern and Nova's motions for decertification of the conditionally certified FLSA collective are DENIED, and Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23 is DENIED.

**SO ORDERED** at Hartford, Connecticut, this 29th day of March, 2024.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE