## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YELENA SAVINOVA *and* YEMILIYA MAZUR, *individually and on behalf of others similarly situated*,     *Plaintiffs*, | ) ) ) ) ) | 3:20-cv-1612 (SVN) |
| v. | ) ) | |
| NOVA HOME CARE, LLC, SOUTHERN HOME CARE SERVICES, INC., ALEH HULIAVATSENKA, *and* YULIYA NOVIKAVA,     *Defendants*. | ) ) ) ) ) | July 26, 2024 |

### JOINT RULING ON MOTIONS FOR RECONSIDERATION, AND PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

Sarala V. Nagala, United States District Judge.

Plaintiffs are a conditionally certified collective of twenty-six live-in caregivers employed by Defendant Southern Home Care Services, Inc. ("Southern"), Defendant Nova Home Care, LLC ("Nova"), or both between October 27, 2017, and the present, seeking to recover unpaid overtime compensation pursuant to Section 16 of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and unpaid hourly wages and overtime compensation pursuant to Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §§ 31-58 *et seq.*, 31-71a *et seq.*

On March 29, 2024, the Court issued three rulings in this case. First, the Court granted in part and denied in part Southern's motion for summary judgment, and denied Defendant Yuliya Novikava's motion for summary judgment in its entirety. *See Savinova v. Nova Home Care, LLC*, No. 3:20-cv-01612 (SVN), 2024 WL 1344787, at *22 (D. Conn. Mar. 29, 2024). Second, the Court granted in part and denied in part Nova's motion for summary judgment. *See Savinova v. Nova Home Care, LLC*, No. 3:20-cv-01612 (SVN), 2024 WL 1345183, at *15–16 (D. Conn. Mar. 29, 2024). Finally, the Court denied Southern and Nova's motions for decertification of the FLSA

collective and Plaintiffs' motion for class certification.  *See Savinova v. Nova Home Care, LLC*, No. 3:20-cv-1612 (SVN), 2024 WL 1341113, at *10 (D. Conn. Mar. 29, 2024).

All parties moved for reconsideration of aspects of the Court's decisions.  Southern, joined by Nova, argues the Court erred in holding there is a genuine dispute whether Southern and Nova may be held liable as joint employers.  Def. Southern's Mot. Recons., ECF No. 202; Nova Defs.' Mot. Recons., ECF No. 203.  Southern also separately argues that the Court erred in holding there was a genuine dispute about whether there was an agreement to exclude sleep time.  Plaintiffs argue the Court erred in finding Nova and Southern lacked actual or constructive knowledge of eight specific Plaintiffs' alleged sleep time disruptions.  Pls.' Mot. Recons., ECF No. 205. Plaintiffs also filed a renewed motion for class certification.  Pls.' Renewed Mot. Class Cert., ECF No. 204.  For the following reasons, the Court DENIES all motions for reconsideration and DENIES Plaintiffs' renewed motion for class certification.

## I.    LEGAL STANDARD

Local Rule 7(c)1 provides that a party may file a motion for reconsideration within seven days of the filing of a decision or order by the Court "setting forth concisely the controlling decisions or data the movant believes the Court overlooked."  D. Conn. L. Civ. R. 7(c)1.  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Van Buskirk v. United Grp. of Cos., Inc*, 935 F.3d 49, 54 (2d Cir. 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  Reconsideration is warranted "only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error to prevent manifest injustice."  *Cho v. Blackberry Ltd.*, 991 F.3d

155, 170 (2d Cir. 2021) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc., v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013)).   A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

## II.    SOUTHERN'S AND NOVA'S MOTIONS FOR RECONSIDERATION

Southern and Nova argue the Court erred in its treatment of the joint employer issue in several different respects.  None amounts to a "clear error" that must be corrected "to prevent manifest injustice." *Cho*, 991 F.3d at 170.[1]

First, the Court did not err in finding that so-called "subjective evidence" created a genuine dispute of material fact.  Multiple Plaintiffs testified that Huliavatsenka handled job applications for both Southern and Nova, and that they only communicated with Huliavatsenka while working for both companies.  This created a genuine question over whether Southern and Nova intermingled operations.  *See Savinova*, 2024 WL 1344787, at *9.  Southern claims this testimony is no more than "subjective" beliefs, when the test for joint employment is one of "objective" economic reality.  *See* ECF No. 202-1 at 7.  This "subjective belief" versus "objective evidence" distinction is a new iteration of Southern's prior argument that the Court should not consider testimony from opt-in Plaintiffs when they lack personal knowledge of the companies' ownership and operations.  For similar reasons as set forth in the rulings, this testimony is not mere subjective belief.  Rather, it is a description of the Plaintiffs' personal interactions with the companies.

---

[1] Because the Court does not grant reconsideration of its decision on joint employment, it need not reconsider its holding that there is a genuine dispute whether Southern possessed actual or constructive knowledge of Plaintiffs Belavus, Chumakova, Golova and Savinova's sleep time interruptions, who reported such interruptions only to Nova. *See* ECF No. 202-1 at 21–22.

Further, Southern and Nova do not point to the "subjective" versus "objective" distinction appearing in any controlling Second Circuit case law.  The only Second Circuit case Southern cites for this point is *Shiflett v. Scores Holding Co.*, 601 F. App'x 28 (2d Cir. 2015) (summary order), which does not discuss such a distinction.  In that case, the plaintiff did not even "allege that she was hired, fired, or managed by an employee of [the purported joint employer]." *Id.* at 3.  There was simply no evidence of joint employment, never mind "subjective" versus "objective" evidence.  Otherwise, Southern cites to district court cases where plaintiffs' testimony in support of joint employment was more limited.  *See, e.g.*, *Hernandez v. Sikka*, No. 17-CV-4792 (SJF)(SIL), 2020 WL 1083706, at *12 (E.D.N.Y. Mar. 6, 2020) (granting summary judgment under individual defendant liability tests set forth in *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) and *Carter v. Dutchess Community College*, 735 F.2d 8 (1984), when "lone evidence" was "two identical affidavits" stating individual "held himself out as one of the 'bosses,'" and would "direct [the plaintiff] to clean and bring dishes"); *Chen v. DG & S NY, Inc.*, 406 F. Supp. 3d 216, 222 (E.D.N.Y. 2016) (granting summary judgment under *Barfield/Carter* test for individual defendant liability when single two-page affidavit stated that individual was viewed as "supervisor and boss" because he "had authority to close restaurant at night, came to restaurant on a daily basis, and distributed salaries").  This non-binding precedent falls far short of establishing clear error.

Defendants also argue it was an error to rely on Plaintiff Atongdem's testimony, because in addition to being "purely subjective" and not based on personal knowledge, it is inadmissible as hearsay under Federal Rule of Evidence 801(c).  This argument was previously referenced by Southern in passing in its reply in support of its motion for summary judgment.  *See* Def.

Southern's Reply in. Supp. of Mot. Summ. J., ECF No. 168 at 5.   In relevant part, Plaintiff

Atongdem testified that:

> [W]hen I went there the client was asking me questions [such as "Are you from
> Southern?"], and I was confused.  I called the office . . . [Hulivatsenka] said . .
> . I work hand in hand with them [Southern].  So I want you to help them while
> I look for a case for you . . . .   So when I called to clarify the confusion that I
> was in at the time, that was when I got to know that [Huliavatsenka] works
> hand-in-hand and they kind of share caregivers.  So when he is short and has
> more cases, they help him out, so he was also helping them out.  And because I
> needed cases he, I would say, loaned me to them like that.

Pls.' Ex. 5, Atongdem Dep., ECF No. 164-2 at 47, 62:11-21; *id.* at 48, 64:17–23.  In its ruling, the

Court did not find Atongdem's testimony sufficient to deny Defendants' motions for summary

judgment, specifically stating that it "question[ed] whether the deposition testimony of a single

plaintiff is sufficient to create a material dispute of fact about the existence of an agreement to

share employees."  *See Savinova*, 2024 WL 1344787, at *9.  There is therefore no clear error.  In

any event, the Court notes that some of Atongdem's testimony is based on her personal knowledge:

when she was in search of additional cases, she was assigned to new clients' homes, and her clients

asked her if she was from Southern rather than Nova.  *See id.* at 47, 62:11–16.  The Court will

consider a more fully developed motion *in limine* on the hearsay issue at the appropriate time, but

notes that Huliavatsenka's statements to Atongdem may be considered non-hearsay opposing party

statements under Federal Rule of Evidence 801(d)(2).   Defendants' argument concerning

Atongdem's deposition testimony does not warrant reconsideration.

Defendants next argue the Court erred because, after making factual findings relevant to

the joint employer analysis, the Court did not take the additional step of determining whether those

factual findings were sufficient to show joint employment as a matter of law.   *See* ECF No. 202-

1 at 2.  This argument does not require reconsideration.  The burden on the party moving for

summary judgment may be discharged by 'showing'—that is, pointing out to the district court—

that there is an absence of evidence to support the nonmoving party's case." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 713 (2d Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Defendants satisfied this initial burden.  In response, the non-movant must show "some evidence" which would create a genuine issue of material fact, such that a reasonable jury could hold in the non-movants' favor. *Id.* (quoting *Delaware & Hudson Ry. Co v. Consolidated Rail Corp.*, 902 F.2d 174, 177–78 (2d Cir. 1990); *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).  The Court held that Plaintiffs satisfied their burden by putting forth testimony about alleged coordination between Southern and Nova with respect to recruitment and management of employees; because there was a genuine dispute of fact over the amount of coordination and intermingling in which Southern and Nova engaged, the Court could not hold that Defendants were entitled to judgment as a matter of law on the issue of joint employment. *See Savinova*, 2024 WL 1344787, at *9.

In requesting reconsideration on this issue, Defendants essentially want the Court to weigh the evidence they presented against that Plaintiffs presented, and to conclude that their evidence was stronger on the issue of joint employment, such that they are entitled to judgment as a matter of law.  But the Court is not permitted, on a summary judgment motion, to weigh the evidence; instead, it must view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in favor of that party, and "eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst.*, 101 F.3d 845, 854 (2d Cir. 1996)).  The Court faithfully applied that standard and concluded that genuine disputes of material fact exist as to the level of coordination between the companies, such that a reasonable jury could find in Plaintiffs' favor at trial.  The Court agrees with Plaintiffs that it need not have

made a more affirmative finding that Plaintiffs showed joint employment as a matter of law, as Plaintiffs did not move for such a holding.

Similarly, the Court did not err by failing to apply the complete three-part sequence described in *Zheng v. Liberty Apparel Co. Inc.*, 617 F.3d 182, 184–85 (2d Cir. 2010) ("*Zheng IV*"). To begin, apart from a passing reference to *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 76 (2d Cir. 2003) ("*Zheng II*") in Nova's original briefing, *see* ECF No. 146-2 at 11, Defendants did not discuss *Zheng IV* (or its predecessor decisions) in their original briefing. Any argument that the Court overlooked *Zheng IV* as a controlling precedent is therefore waived, since Defendants did not originally suggest that either *Zheng II* or *Zheng IV* was applicable to their motions.

In any event, *Zheng IV* describes that there are "'three types of determinations' that bear on the analysis of the relevant [joint employment] factors: 'First, there are historical findings of fact that underlie each of the relevant factors. Second, there are findings as to the existence and degree of each factor. Finally, there is the conclusion of law to be drawn from applying the factors, i.e., whether an entity is a joint employer.'" 617 F.3d at 185 (quoting *Zheng II*, 355 F.3d at 76). Importantly, in *Zheng IV*, the Second Circuit affirmed the district court's decision to allow the jury to decide whether two companies were the plaintiffs' joint employers, when there were questions of material fact as to how various factors regarding the employment arrangement applied. *Id.* at 185–86. The Second Circuit also appeared to cautiously walk back the idea that the third step was a pure conclusion of law to be decided by the court: "[*Zheng II*] recognized that the joint employment question is a mixed one of law and fact: 'Finally, there is the conclusion of law *to be drawn from applying the factors, i.e.*, whether an entity is a joint employer.'" *Id.* at 186 (emphasis

7

in *Zheng IV*).  It also acknowledged that mixed questions of law and fact are "especially well-suited for jury determination." *Id.* at 185 (cleaned up).[2]

Finally, the Court is unpersuaded that its readings of *Murphy v. Heartshare Human Services of New York*, 254 F. Supp. 3d 392 (E.D.N.Y. 2017), or *Lopez v. Chock Dee Corp.*, No. 17 Civ. 2731 (AKH), 2018 WL 11464040 (S.D.N.Y. Dec. 12, 2018), amount to fundamental errors that warrant reconsideration.  The Court acknowledges that *Murphy* arose in the context of a motion to dismiss, but still finds its teachings persuasive.  *Lopez* held, on summary judgment, that the plaintiff's testimony about the joint decision making of the employers, coupled with other factors, was sufficient to create a triable issue on the question of joint employment.  *See* 2018 WL 11464040, at *5.  Both cases fall short of showing that, in this case, it was an error to deny summary judgment.  The question of joint employment is ultimately a fact intensive inquiry suitable for a jury determination.  *See Zheng II*, 355 F.3d at 76, n.13.

In addition to the Court's treatment of the joint employment issue, Southern separately argues the Court erred in finding there is a genuine dispute whether Southern and Plaintiffs entered into a valid agreement to exclude sleep time.  Southern cites to out-of-circuit case law for the proposition that an employee's acquiescence to an employer-imposed policy may constitute an implicit agreement.  ECF No. 202-1 at 23–24 (citing *Bodie v. City of Columbia, S.C.*, 934 F.2d 561, 564 (4th Cir. 1991), and *Trocheck v. Pellin Emergency Med. Serv., Inc.*, 61 F. Supp. 2d 685, 693 (N.D. Ohio 1999)).  This case law is not controlling, and does not make the Court's conclusion

---

[2] Insofar as *Zheng IV* suggested that the third step is a pure question of law at the summary judgment stage, 617 F.3d at 186, the Court here determined that Defendants are *not* entitled to judgment as a matter of law.  *See Savinova*, 2024 WL 1344787 at *9; Fed. R. Civ. P. 56(a) (stating summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact *and the movant is entitled to judgment as a matter of law*") (emphasis added); *see also Zheng II*, 335 F.3d at 76 (describing how "[i]n order to grant summary judgment for defendants, the District Court would have to conclude that, even where both the historical facts and the relevant factors are interpreted in the light most favorable to plaintiffs, defendants are still entitled to judgment as a matter of law").

otherwise a clear error.  Continued employment is not irrefutable evidence of an implied agreement warranting summary judgment, never mind reconsideration.

For these reasons, Southern's and Nova's motions for reconsideration are denied in their entirety.

### III.   SOUTHERN'S AND NOVA'S REQUEST FOR INTERLOCUTORY APPEAL

In the alternative, Southern and Nova request certification for an immediate appeal pursuant to 28 U.S.C. § 1292(b).  Their request is denied.

Section 1292(b) enables district courts to certify orders for interlocutory review when "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  A district court must "exercise great care" in certifying a case for immediate interlocutory appeal, *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.*, 964 F.2d 85, 89 (2d Cir. 1992), because it is "a basic tenent of federal law to delay appellate review until a final judgment has been entered."  *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865–66 (2d Cir. 1996) ("The use of § 1292(b) is reserved for those cases where an immediate appeal may avoid protracted litigation.").

For the reasons it denied Defendants' motions for reconsideration, the Court cannot find this matter involves a controlling question of law over which there is substantial ground for difference of opinion, such that an interlocutory appeal is appropriate.  The Second Circuit case law cited does not support Defendants' positions, and the out-of-circuit and district court authority cited is not controlling on this Court.  In addition, Defendants do not argue, nor can the Court otherwise conclude, that an interlocutory appeal would avoid protracted litigation in this case.  This

case has been pending for more than three years, and trial is scheduled to begin in less than three months.

In short, this is not the "exceptional" case that "justif[ies] a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (citation omitted). Defendants' request for certification of an interlocutory appeal is therefore denied.

## IV.    PLAINTIFFS' MOTION FOR RECONSIDERATION

The Court also denies Plaintiffs' motion for reconsideration on the issue of whether certain Plaintiffs had demonstrated Southern and Nova had constructive knowledge of sleep time interruptions. The Court did not take an unduly narrow view of "constructive knowledge" when holding there is no genuine dispute Defendants lacked notice of eight Plaintiffs' purported sleep time interruptions—the sole basis on which Plaintiffs move for reconsideration. The Court correctly granted summary judgment in Southern's favor with respect to Plaintiffs Fedotova and Semir Ahmetovic, and for Nova regarding Plaintiffs Doumbia, Fedotova, Ilina, McLaughlin, Rutkowska, and Spencer.

Counter to Plaintiffs' characterization, the Court did not only consider whether these Plaintiffs personally made complaints to management. Indeed, the Court agrees with Plaintiffs that complaints are not strictly required to put defendant employers are on notice. *See Savinova*, 2024 WL 1345183, at *10 ("There is no strict requirement that a plaintiff lodge a formal complaint of sleep time interruptions to establish an employer's actual or constructive knowledge. Indeed, the Second Circuit has reversed a district court for relying too heavily on the fact that a live-in caregiver plaintiff never lodged a formal complaint."). Rather, the Court considered the totality of the evidence in holding Defendants lacked actual or constructive knowledge of these Plaintiffs'

sleep time interruptions.  Plaintiffs cannot rely on their previously-rejected argument that Defendants were on notice because they knew that Plaintiffs generally served elderly clients who required around-the-clock attention, and other live-in caregivers had reported their personal issues.

Plaintiffs now argue that all eight Plaintiffs as to whom the Court granted summary judgment identified shared clients with other caregivers who had lodged complaints, thereby putting Defendants on notice of sleep time interruptions.  Specifically, Plaintiffs claim that "[i]n their memorandum, [they] listed the initials of each non-complaining plaintiff's clients about whom other caregivers complained. . . . [T]he Court erred because the same initials are clearly marked in the redacted excerpts of the relevant plaintiffs' deposition transcripts, which are cited in Plaintiffs' Local Rule 56(a)(2) statements of fact."  ECF No. 205 at 6–7.  Although Plaintiffs cite to no specific examples, this statement apparently refers to how, in Plaintiffs' opposition to Nova's motion for summary judgment, Plaintiffs argued that Doumbia and Spencer worked with clients C.D., R.E., and M.G., about whom other caregivers made complaints—even if they did not personally complain.  *See* Pls.' Opp. Defs.' Mot. Summ. J., ECF No. 165 at 19–20.  But because Plaintiffs had not supported their assertion that Doumbia and Spencer actually worked with these clients (and when), the Court granted Nova's motion for summary judgment.  *See Savinova*, 2024 WL 1345183, at *11.  To the extent Plaintiffs now claim that they previously identified that *all* of the eight Plaintiffs against whom summary judgment was granted had the same clients as other caregivers who did complain, the Court disagrees.  This issue was only raised in the summary judgment briefing with respect to Plaintiffs Doumbia and Spencer.  *See* ECF No. 165 at 19–20.  As to Plaintiffs' assertion that their Rule 56(a)2 Statement contained citations to other Plaintiffs' depositions, the Court does not have an obligation "to perform an independent review of the record to find proof of a factual dispute."  *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d

Cir. 2002); *see also Swinton v. Wright*, 776 F. App'x 721, 723 (2d Cir. 2019) (summary order) (affirming a district court's grant of summary judgment notwithstanding evidence in the record that the plaintiff never brought to the court's attention).  Plaintiffs' failure to bring the overlapping clients to the Court's attention in their briefing for any Plaintiffs other than Doumbia and Spencer does not justify reconsideration.

The Court accurately applied the constructive knowledge standard, and none of the cases re-discussed by Plaintiffs change the Court's conclusion.  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008), remains distinguishable because there, time sheets put the employer on notice of unpaid overtime work.  Likewise, in *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 525 (2d Cir. 1998), the employer "*admitted* having knowledge of at least some of plaintiff's overtime activities," having observed some of the off-duty tasks in question.  (Emphasis added). Finally, in *Foster v. City of New York*, No. 14 Civ. 4142 (PGG), 14 Civ. 9220 (PGG), 2017 WL 11591568, at *22 (S.D.N.Y. Sept. 30, 2017),[3] supervisors had personally observed the plaintiffs engaging in uncompensated overtime work.  By contrast, Plaintiffs continue to rely on the general fact that elderly clients often have difficulty sleeping, without more.

For these reasons, Plaintiffs' motion for reconsideration is denied.

## V.    PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

Finally, the Court denies Plaintiffs' renewed motion for class certification.  Plaintiffs do not raise any new evidence to show numerosity is met nor attempt to redefine the class.

The Court considers this motion a renewed motion for class certification brought under Federal Rule of Civil Procedure 23(c)(1)(C), rather than a motion for reconsideration of the Court's earlier ruling.  *See Hargrove v. Sleepy's LLC*, 974 F.3d 467, 476–77 (3d Cir. 2020) (treating motion

---

[3] *Abrogated on other grounds by Perry v. City of New York*, 78 F.4th 502 (2d Cir. 2023).

as a renewed motion under Rule 23(c)(1)(C), rather than a motion for reconsideration).  The aim of Rule 23(c)(1)(C) is to allow plaintiffs to address district courts' concerns after initial denials of class certification.  *See In re Initial Public Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007). Accordingly, "[d]istrict courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial."  *Id.*

Where an earlier motion for class certification has been denied, courts generally hold that "any renewed motion for class certification by Plaintiffs must be based on a more robust submission that points to admissible evidence where necessary to establish the Rule 23 requirements for class certification."  *Vega v. Semple*, No. 3:17-CV-107 (JBA), 2023 WL 5395479, at *3 (D. Conn. Aug. 22, 2023); *Dash v. Seagate Techs. Holdings, Inc*., No. CV 13-6329, 2016 WL 4491822, at *1 (E.D.N.Y. July 12, 2016) ("Plaintiff's counsel is hereby advised that the [renewed] motion shall not contain arguments or evidence previously submitted to the Court on the prior motion . . . . [I]f the Court finds the renewed motion for class certification to be a frivolous attempt at reargument of the prior motion, costs may be imposed.").  Alternatively, plaintiffs could opt to propose a different and more supportable class definition on a renewed motion, without showing a change in the law or new evidence.  *Hargrove*, 974 F.3d at 476–77.

Although district courts are "required to monitor class proceedings and 'reassess [their] class rulings as the case develops" under Rule 23(c)(1), there have been no such developments in this case.  *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 261 (2d Cir. 2021) (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999).  Plaintiffs do not propose a different class definition or offer any new evidence; they simply wish to relitigate the Court's ruling on the old record, for the same class definition previously rejected.  The Court denied the prior motion for class certification because the proposed class of live-in caregivers, who had their workweeks split

between Nova and Southern while on the same live-in assignment, did not meet the Second Circuit's standard for numerosity.  *See Savinova*, 2024 WL 1341113, at *8.  In this renewed motion, Plaintiffs again claim to have met the requirement as a matter of probability:  because 100 percent of the seven opt-in Plaintiffs who worked for both Nova and Southern fall into this definition, and it is more likely than not that at least 33 of the remaining 88 Southern-Nova employees (or 37.5 percent) would as well, the 40-member threshold is reached, in their view.  For substantially the same reasons as articulated in its prior ruling, Plaintiffs have not met their burden. *See Savinova*, 2024 WL 1341113, at *8–10.  Specifically, there is insufficient in the record from which the Court could conclude, by a preponderance of the evidence, that at least 33 of the remaining 88 Southern-Nova employees worked for both companies in the same week, for the same client (as required by Plaintiffs' class definition).

Plaintiffs essentially ask the Court to certify the class while simultaneously ordering Defendants to produce the evidence necessary to meet their burden.  In their renewed motion, Plaintiffs posit that the Court could order Defendants to produce the schedules (including client names) and pay records for all the remaining live-in caregivers.  ECF No. 204 at 8.  If this production shows that numerosity is not met, Plaintiffs say they will "report back" to the Court on the "actual number" and the Court can then "simply decertify" the class.  *Id.*  This is highly inefficient, particularly when Plaintiffs could have obtained this evidence in discovery and a trial date is set for October.  Plaintiffs have the process backward:  they were required to obtain the information needed to meet their burden of showing numerosity, and the other class certification requirements, during the discovery process.  Having failed to do so, they do not get unfettered additional bites at the apple.  Plaintiffs' complaints about the burden this discovery would have posed *to Defendants* are a veiled attempt to justify their failure to diligently pursue necessary

evidence during the discovery process.  It is also counterintuitive that they claim that this discovery was overly burdensome earlier in the litigation, but should be allowed now, *after* the discovery period has closed and the Court has determined they failed to meet the numerosity threshold.

As for the *Robidoux v. Celani*, 987 F. 2d 931, 936 (2d Cir. 1993), factors, Plaintiffs provide some new details about where exactly opt-in Plaintiffs live outside Connecticut, which includes nearby in the tristate area.  *See* ECF No. 204 at 7–8.  But alters neither the Court's prior conclusion that joinder may be practicable, nor its original assessment of the other *Robidoux* factors.  *See Savinova,* 2024 WL 1341113, at *10.

Plaintiffs' renewed motion for class certification is therefore denied.

## VI.    CONCLUSION

For the reasons described herein, all motions for reconsideration are DENIED and Plaintiffs' renewed motion for class certification is DENIED.

The Court does not certify this Order for an interlocutory appeal under 28 U.S.C. § 1292(b).

As described in its ruling granting in part and denying in part the Nova Defendants' motion for summary judgment, the Court is considering whether to grant summary judgment in Defendants' favor on the break time claims of Plaintiffs Fuseini, Harrison, Jaksina, Kalata, and Vlasova on statute of limitations grounds.  *See* Fed. R. Civ. P. 56(f)(3).  By **August 9, 2024**, Plaintiffs may file a memorandum of law and any supporting exhibits demonstrating why the Nova Defendants should not be granted summary judgment on this basis.  Defendants may respond within **fourteen days** after Plaintiffs' submission.  No reply briefing will be permitted.

**SO ORDERED** at Hartford, Connecticut, this 26th day of July, 2024.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE